[Cite as *In re V.L.M.*, 2011-Ohio-6641.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO.  10 MA 82 |
| V.L.M. | ) | |
| DOB: 2-23-05 | ) | |
| | ) | OPINION |
| VICTORIA WHEELER, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | |
| | ) | |
| JASON MURZDA, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas
                               Court, Juvenile Division
                               Case No. 05 JE 632.

JUDGMENT:                      Affirmed.

APPEARANCES:
For Plaintiff-Appellee:        Attorney Mark A. Carfolo
                               23 Lisbon Street, Suite K
                               Canfield, OH  44406

For Defendant-Appellant:       Attorney Lynn Sfara Bruno
                               412 Boardman-Canfield Road
                               Youngstown, OH  44512


JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich

                                           Dated:  December 15, 2011

[Cite as *In re V.L.M.*, 2011-Ohio-6641.]

DeGenaro, J.

**{¶1}** This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Jason Murzda, appeals the April 28, 2010 decision of the Mahoning County Court of Common Pleas, Juvenile Division, overruling his objections to the magistrate's denial of his motion to be designated sole residential parent of his minor daughter. On appeal, Murzda contends that the trial court erred when it found no change in circumstances and subsequently failed to conduct a best interest analysis. Specifically, Murzda argues that interference with his visitation rights caused by the child's residential parent, Plaintiff-Appellee, Victoria Wheeler, constituted a change in circumstances.

**{¶2}** Upon review, we find the trial court did not commit an abuse of discretion in finding no change in circumstances and thus was not required to proceed to a best interest analysis. The judgment of the trial court is affirmed.

**Facts and Procedural History**

**{¶3}** Murzda and Wheeler were never married, but have one minor daughter together, V.L.M., who was born February 23, 2005. On July 8, 2005, Wheeler filed a motion for child support. Although child support issues were considered at times concurrently with visitation and custody issues, child support is not an issue in this appeal. On July 11, 2005, the court issued a judgment entry finding a parent-child relationship between Murzda and V.L.M. On August 12, 2005, Murzda filed a motion to allocate parental rights and responsibilities, requesting he be designated the residential parent, or in the alternative, that the court adopt a shared parenting plan. On January 17, 2006, the magistrate issued a decision designating Wheeler as the residential parent and legal custodian and designating Murzda as the non-residential parent. The magistrate also memorialized the agreement reached between the parties regarding the visitation awarded to Murzda. On February 15, 2006, the court issued a journal entry adopting the magistrate's January 17, 2006 decision.

**{¶4}** On December 15, 2006, Murzda filed a motion for reallocation of parental rights and responsibilities. On February 7, 2007, the magistrate appointed a guardian ad litem to represent the interests of V.L.M. On December 18, 2007, Wheeler filed a motion

for contempt against Murzda, alleging that he failed to comply with the court's order regarding telephone contact. On April 18, 2008, Murzda filed a motion for contempt against Wheeler, alleging that she had withheld visitation, and in response, Wheeler filed a motion to dismiss Murzda's motion. On May 28, 2008, Wheeler filed a motion to terminate companionship, requesting that the court terminate the current order of companionship and substitute the court's standard visitation schedule. On July 9, 2008, Wheeler filed a motion requesting an order to change the location for exchanges of the minor child from Wheeler's residence to Hope House Visitation Center and to prohibit Murzda from filming during exchanges.

{¶5} On September 4, 2008, the matter came for hearing before the magistrate. Prior to the hearing, the parties had informed the court that they had reached an agreement on all of the issues. The joint agreement was read into the record, after which each party ratified their agreement, their intention to comply and their request it be adopted as an order of the court. During the hearing, the parties also agreed that the contempt motions pending before the court were mutually to be dismissed, and Murzda withdrew his motion for reallocation of parental rights. The parties also stipulated to the guardian ad litem's report.

{¶6} On October 1, 2008, the magistrate issued a decision, finding in pertinent part:

{¶7} "1. The current Visitation/Companionship Schedule is modified as follows and will commence on 9/12/08. Defendant/father shall enjoy companionship with the child [V.L.M.], DOB: 2/23/05:

{¶8} "A. Alternate weekends from Friday at 6:30 P.M. to Sunday at 9:00 A.M.

{¶9} "B. Every Monday from 7:30 A.M. to 5:00 P.M., pick-up and drop-off at the child's pre-school, Poland-Boardman Preschool, Poland, Ohio.

{¶10} "C. Alternate Friday's (when father does not visit the entire week-end) from 7:30 A.M. until 2:30 P.M., when the child is returned by father to preschool. This shall commence 9/19/08.

{¶11} "D. Holiday visitation shall be pursuant to the Local Parenting Time

Schedule, a copy of which is attached hereto as Exhibit 'A.'

{¶12} "E. On Friday's and Saturday's, at 8:00 P.M., when the child is with one parent, one mandatory phone call to the other parent, of no more than 15 minutes.

{¶13} "F. There shall be no filming or videotaping of either party, by the other party, nor any discourteous behavior between the parties.

{¶14} "G. Summer visitation 2009. Alternate weekly periods. Beginning Sunday at 6:00 P.M. until the following Sunday at 9:00 A.M. * * * During summer visitations, father shall visit on Wednesday's from 5:00 P.M. to 8:00 P.M. During summer visits, there shall be mandatory phone calls, from the child, to whichever parent she is not residing with, daily at 8:00 P.M., for up to 15 minutes.

{¶15} * * *

{¶16} * * *

{¶17} "3. Each party shall immediately notify the other of any medical emergency of the child and be listed on any school notification lists."

{¶18} During the hearing, the parties had agreed to use Hope House as the exchange location. However, the decision also noted that subsequent to the hearing, the court discovered that exchanges could not be made at Hope House due to its hours of operation. The court had informed counsel of this and requested an alternative location for transfer of the child, which counsel had provided.

{¶19} On October 16, 2008, Murzda filed a motion to be designated sole residential parent or, in the alternative, shared parenting, and motion for contempt. His motion alleged that although he had companionship with V.L.M., Wheeler had "consistently and willfully denied companionship on a regular and continuing basis." Murzda also attached a shared parenting plan to this motion.

{¶20} On October 21, 2008, the trial court issued a judgment entry adopting the magistrate's October 1, 2008 decision. Neither party appealed this decision.

{¶21} On January 9, 2009, Murzda filed an amended motion for contempt and motion to be designated sole residential parent or, in the alternative, shared parenting, alleging that after repeated communication attempts to ascertain the location for

exchanges, Wheeler denied him visitation on December 24, 2008 and on December 31, 2008 through January 1, 2009. Murzda attached an affidavit to this motion, stating that many contacts were made through his counsel's office to ascertain the times of the exchanges and that in order to ensure he did not misinterpret the communications, he went to all three meeting places and V.L.M. was not available for the holiday exchanges at any of the locations. He also attached the faxes sent between the attorneys, discussing an alternative location for the exchange. Furthermore, Murzda asserted that Wheeler was supposed to pick up the child on January 4, 2009 at 9:00 a.m. He waited twenty minutes in the preschool parking lot, and as of 11:47 a.m. on January 5, 2009, Wheeler had not made any attempt to pick up or contact V.L.M.

**{¶22}** On February 4, 2009, Wheeler filed a motion for show cause order as to why Murzda should not be held in contempt. She alleged that Murzda failed to follow the court's order regarding visitation drop-off and pick-up and failed to notify Wheeler when V.L.M. required emergency medical treatment while in Murzda's care. On March 4, 2009, Murzda filed a motion in opposition to Wheeler's motion for show cause order, denying the allegations within Wheeler's motion. On April 24, 2009, Wheeler was deposed. On April 30, 2009, the case came before the magistrate for a pretrial conference during which the court and counsel reviewed the report and recommendation of the guardian ad litem.

**{¶23}** On May 20, 2009, Murzda filed a proposed shared parenting plan. On June 4, 2009, Murzda filed a motion for sanctions and renewed request to be designated sole residential parent. Murzda stated that a hearing on all contested contempt and custody issues had been scheduled for June 2, 2009. He contended that a number of witnesses were subpoenaed at his expense, but that prior to the hearing commencing at approximately 1:30 p.m., it was ascertained that a witness from the minor child's preschool was not present so the case was subsequently continued. When Murzda's counsel contacted the witness, she said that Wheeler had told her on the morning of the hearing that the case was continued and that she should not appear.

**{¶24}** On July 17, 2009, Wheeler filed a motion to dismiss Murzda's motion for shared parenting, alleging that for the court to consider his motion, Murzda must first

show a change in circumstances had occurred, which he failed to do. In response, Murzda filed a motion in opposition to Wheeler's motion to dismiss, contending that since the prior court order, there had been changed circumstances including Wheeler's denial of companionship, as well as other attempts to alienate his parental rights.

{¶25} On August 3, 2009, Murzda filed a motion for contempt and renewed motion for sole residential parenting or, in the alternative, shared parenting, with a shared parenting plan attached. In the motion, Murzda alleged that Wheeler continued to engage in behavior to alienate his parental relationship. He contended that Wheeler refused to allow other responsible individuals to transport V.L.M. when he was unavailable due to work and that Wheeler failed to abide by the required telephone contact.

{¶26} On August 18, 2009, Erica Napolitano, the Administrator of the Poland-Boardman Child Care Center, was deposed regarding the preschool attendance records and the incident where Wheeler told her that the June 2, 2009 hearing was going to be continued because Wheeler had changed attorneys.

{¶27} On September 8, 2009, the case came for a hearing before the magistrate on the parties' multiple motions. On cross-examination, Wheeler testified regarding problems with visitation she and Murzda encountered, beginning with the difficulty with exchanges during the Christmas and New Year's break. She did not want to do the exchanges at the preschool when the school was closed because it was a vacant parking lot. During that time period, she instructed her prior attorney to contact Murzda's attorney to arrange for an alternative location for exchanges. Counsel then handed Wheeler Defendant's Exhibits C, F, and B and Wheeler confirmed that the exhibits were faxes sent between her attorney and Murzda's attorney on December 30. Her attorney had sent the first fax, and Murzda's attorney responded that same day, indicating he was amenable to the parking lot of Taco Bell in Struthers as a location to perform the exchange. Wheeler explained that she refused this location because she will not do any exchanges in Struthers due to false criminal charges. She said that she does not go to bars in Struthers, such as La Villa; however, she then stated it had probably been six months

since she had been to La Villa.

**{¶28}** Wheeler testified that Murzda did not receive his holiday visitation on December 24 because he refused it. Wheeler further testified that she did not know if Murzda received his holiday visitation on December 31, 2008. Regarding the holiday visitation, she stated that she made several phone calls to make arrangements for an alternative exchange location because she wanted a public place, not a vacant school with no cameras or security.

**{¶29}** When asked if the magistrate's October 1, 2008 decision had been changed to provide for a different exchange location other than the child's preschool, Wheeler stated that the issue was they were supposed to do the exchanges at Hope House but it could not accommodate their hours. Wheeler admitted that at the deposition, she had confirmed that the court order had not been changed and she had not asked for a revision of it through the court system, although she stated that this was because she had been in-between attorneys, so the order had needed to be clarified.

**{¶30}** Wheeler testified that she never made a decision not to send V.L.M. on a visit with Murzda. She later admitted that when asked in the deposition if she made a decision not to send the child to visit with Murzda on October 17 or October 20 of 2008, she had answered, "Probably." Counsel also referred to Page 27, Lines 18 through 21 of the deposition, where she had asked Wheeler if she had withheld visitation of her own volition on October 3 and October 6 of 2008, and Wheeler read her answer, "Of my own due to her safety. Yes. Okay." Wheeler then denied that she had admitted during the deposition that she withheld visitation. When asked, "Yes is not an admission to you?", she responded, "No it's not."

**{¶31}** Counsel referred to Page 32, Lines 19 through 20 of the deposition transcript where Wheeler was asked why she would not want the child to enjoy companionship with Murzda. Wheeler testified she had responded that she was concerned for the child's welfare and that Murzda had not brought V.L.M. home after visitation for the entire month of September. Wheeler stated she had called the police, but Murzda was not charged with interference with her custodial rights because the officer

got on the phone with him before he came to the call. She confirmed that she had not called Children Services. Counsel asked if she had her attorney at the time file a contempt motion, and Wheeler responded that she was in-between attorneys then. Counsel then showed Wheeler Defendant's Exhibit D, her former attorney's motion to withdraw, and Wheeler confirmed that this exhibit was dated October 24, 2008. When asked if these incidents predated October 24, Wheeler responded, "I guess. I don't remember."

**{¶32}** Murzda's counsel referred to the deposition transcript at page 52, where she and Wheeler went through a 2008 calendar and Wheeler confirmed that the dates of September 15, September 29, October 3, October 6, October 10, October 13, October 17, and October 20 fell on Mondays or Fridays of that year, and these were dates that Murzda was scheduled to pick up V.L.M. at the preschool. When asked if Murzda received visitation on those days, Wheeler responded, "I can't recall."

**{¶33}** When counsel later asked again if Murzda missed those days of visitation because the child was not at preschool, Wheeler replied, "Well, he made them up by – by keeping her the several months that he kept her until we worked out a mutual drop-off point." Counsel asked if she was at the preschool on Sunday at 9 a.m. to pick up the child, and she responded that she discussed it with Murzda and said she would not go to a vacant parking lot. Wheeler testified that she had an email to her former attorney stating that she was going to file a contempt motion unless Murzda chose a neutral ground in a public place. She further testified that, through attorneys, they had chosen the Boardman BP on the corner of South Avenue and 224. She stated that the BP station would work for Sunday exchanges and when school is not in session.

**{¶34}** When asked if on the dates in September and October that Murzda did not receive his companionship, did she call him and tell him not to come to the preschool, Wheeler replied, "[a]bsolutely not," but then later said she could not recall if she contacted Murzda. Wheeler stated that she usually does not report V.L.M. off from school because she is charged for the day anyway.

**{¶35}** Regarding the provision of the court order granting Murzda visitation on

alternate weekends beginning on Friday at 6:30 p.m., Wheeler testified that Murzda had called her and said that the order was incorrect and asked if he could pick up the child at 7:30 a.m. instead. Wheeler stated that she agreed to let him pick up the child at 7:30 a.m.

**{¶36}** Regarding the provision of the court order providing for phone calls on Fridays and Saturdays at 8:00 p.m. of not more than 15 minutes, Wheeler testified that she did not agree to that. She stated that she occasionally has V.LM. call Murzda, explaining that whenever the child asks to speak to him, she calls. She later testified that mandatory means you must do it, but stated that the court order was incorrect and needed to be changed.

**{¶37}** Wheeler testified that she encouraged her daughter to love and respect Murzda and to have a relationship with her sister, Murzda's other daughter. Wheeler further testified that V.L.M. loves her father and enjoys spending time with him and it is in the child's best interest to have a good relationship with both parents.

**{¶38}** On direct examination, Wheeler testified that on days when V.L.M. was not in school, Murzda never called her and asked where the child was. She stated that on the Fridays and Saturdays when Murzda has visitation, V.L.M. calls her but never at 8:00 p.m. Wheeler confirmed that Murzda is supposed to have visitation during the summer on Wednesdays from 5:00 p.m. to 8:00 p.m., but during the summer of 2009, Murzda never exercised that visitation. She testified that she would go to the gas station at 5:00 p.m. with V.L.M., but Murzda would not come. He never called to make alternate plans, although Wheeler called him on several occasions and he said that he was working.

**{¶39}** On re-cross examination, Wheeler testified that the court order did not say that the gas station was the exchange location for midweek visitation during the summer; however, she and Murzda had agreed upon the gas station together. She further testified that when she was supposed to be at the gas station for exchanges, she always came. She said she did not pick up V.L.M. for midweek visitation during the summer weeks that Murzda had the child because he said it was not in the order and refused her visitation. She did not file a contempt motion for his refusal of visitation. Wheeler denied that she

refused to let anyone other than Murzda exchange V.L.M. during midweek visitation.

{¶40} Next, Jason Murzda testified. On direct examination, Murzda stated that he filed contempt motions, requested a change in custody, and proposed shared parenting plans because Wheeler refuses to follow the visitation schedule and has denied him visitation and phone calls on numerous occasions. He said that every time he was supposed to have companionship under the court order, he would go to the preschool. Sometimes Wheeler would come and other times if she did come she was a half hour or forty minutes late. On the Mondays and Fridays that he missed visitation, Wheeler never let him know in advance that V.L.M. would not be in school. He also said that these missed visitations were never made up. He testified that he is frustrated because he follows the court order; he may not call exactly at 8:00 p.m., but Wheeler receives her calls every night.

{¶41} Murzda's counsel then introduced Defendant's Exhibit R, which Murzda confirmed was a diary he kept over the last year in order to show how much visitation he was denied. Counsel then referred to December 24, 2008 and asked why Murzda had written, "Denied visitation, refused to meet at [V.L.M.'s] school, refused to have baby-sitter meet at [V.L.M.'s] school." Murzda explained that he had attempted to pick up the child, but no one met him at the school. He also said that he and Wheeler had spoken on the phone and she refused to have anybody, including Murzda's babysitter, meet her at the preschool.

{¶42} Counsel then handed Defendant's Exhibits B, C, and F to Murzda and asked him to explain the documents. Murzda said that he and Wheeler were having difficulties with the location for the exchange because she refused to meet at the school. He testified that he tried to accommodate Wheeler so that he could see his daughter. In reference to Exhibit B, a letter from Wheeler's former attorney which suggested a public location and alleged that Murzda refused to pick up the child at Wheeler's house, Murzda explained that he did not want to go to her house because "she continues to videotape and she's always got a group of people there to – to create a situation while they're picking up [V.L.M.]. She's made several threats in regards to she's going to have my job,

which instituted the videotaping every time I pick [V.L.M.] up." He stated that he works for the Struthers Police Department as a K9 officer. He perceived Wheeler's threat to mean that she was going to create a situation where he would be fired in regards to something like domestic violence.

{¶43} Murzda agreed that he tried to accommodate Wheeler through Exhibit C, and his counsel responded to her attorney within two hours. That response stated that he was amenable to the Taco Bell at Youngstown-Poland Road for the holiday exchange since the preschool was closed. He explained that Wheeler's attorney chose Taco Bell, he agreed, and then the location changed. Murzda said that he had gone to the preschool, then to the Taco Bell, and then to the BP station, but nobody was at any of those locations.

{¶44} Murzda explained that Defendant's Exhibit F was relevant because Wheeler claimed that he kept V.L.M. from her for over a month. He stated that this was not true and that Wheeler never picked up V.L.M. He also agreed that he instructed his attorney to notify Wheeler's attorney on January 2 to pick up the child pursuant to the court order at 9:00 a.m. on Sunday, January 4. However, Wheeler did not pick V.L.M. up at that time on Sunday. Since Murzda was supposed to receive visitation on Monday from 7:30 a.m. to 5:00 p.m., he returned home with V.L.M. until 5:00 p.m. on Monday when he took her back to school and Wheeler was there to pick her up.

{¶45} In regards to summer visitation when Wheeler was supposed to pick up V.L.M. on Wednesdays at 5:00 p.m., Murzda stated that Wheeler would not show up and when he called her, he did not get an answer. He testified that she called him once about the midweek visitation, and he explained to her that he worked on Wednesdays and would not be able to pick up the child on any of the Wednesdays. He did not offer to have somebody else pick V.L.M. up, but he offered to switch the day to Thursday, and Wheeler refused. In the past, Wheeler had not allowed anybody else to pick up the child.

{¶46} Murzda stated that on numerous occasions Wheeler had come to his house and caused inconvenience where he needed to call the police to have her removed from his property. He described an incident where he waited at Wheeler's house for thirty

minutes to drop off V.L.M., and Wheeler did not come or call him, so he returned home. She then called and told him to bring V.L.M. back. Wheeler subsequently showed up in his driveway, and he gave V.L.M. to her. Wheeler put the child in the car, and then she walked up to his car and began talking to him through his closed window. When he would not look at her, she began punching the window. Murzda then called the police.

{¶47} On cross-examination, Murzda testified that during the times he alleged V.L.M. did not go to school in September and October, he never called Wheeler because she either did not answer her phone or would make a smart comment and hang up. Murzda knew that V.L.M. was not in school because Wheeler was purposely denying his visitation.

{¶48} In response to Wheeler's allegation that he kept V.LM. for over a month, Murzda stated that pursuant to the court order, the child is supposed to be returned Sunday at 9:00 a.m. at her preschool. He said that he would arrive at the school and Wheeler would not be there. He would keep V.L.M. overnight and take her to school on Monday. Wheeler would then pick her up after school.

{¶49} Murzda confirmed that he and Wheeler had changed the visitation time on Friday from 6:30 p.m. to 7:30 a.m. He stated that he believed that his attorney wrote down that the exchange time was supposed to be 7:30 a.m. However, the court stated that the court order was written exactly as dictated during the hearing, and both sides had agreed that it was their understanding of the agreement. Murzda also established that the only mistake on the court order was the time of pick up on Fridays.

{¶50} On re-cross examination, Murzda said that visitation is currently on schedule and it became consistent prior to the first time he filed on Wheeler, which he confirmed was October of 2008. Murzda stated that summer visitation had gone perfectly, but exchanges at school had not started yet. He also said that when the preschool is closed, he is willing to meet at the BP station for exchanges.

{¶51} At the end of the hearing, the court admitted defendant's exhibits; however, the court found that the preschool attendance records were inadmissible as hearsay.

{¶52} On October 26, 2009, the magistrate issued a decision that overruled

Murzda's motion to be designated sole residential parent, found Wheeler in contempt for denying Murzda visitation on 12/24/08 and 12/31/08, and awarded Murzda compensatory companionship time. The magistrate explained that the testimony indicated that Murzda missed extensive visitation in September and October 2008 on Mondays and Fridays because V.L.M. was not at the preschool for the exchanges; however, these missed visitations occurred prior to 10/21/08, the date of the judgment entry ordering the visitation schedule. The magistrate concluded that these dates could not be considered contempt.

{¶53} Therefore, the magistrate found that 12/24/08 and 12/31/08 were the only two dates post 10/21/08 where there was clear and convincing evidence that Wheeler withheld visitation. The magistrate further found no evidence of a change in circumstances and noted a continued pattern of poor behavior between the parties that had not changed since the most recent court order. Since no change in circumstances was found, the magistrate stated it did not need to examine the issue of best interest. Finally, in regards to contempt, the magistrate found that the evidence showed neither party fully complied with the trial court's order and both parties mutually and unilaterally modified the order. Thus, except for the denial of holiday visitation by Wheeler, the magistrate found it was "impossible to discern which party is at fault."

{¶54} On November 2, 2009, Murzda filed objections to the magistrate's decision, objecting to the magistrate's finding that there was no evidence of a change in circumstances. Murzda also argued that the magistrate erred in failing to address his proposed shared parenting plans.

{¶55} On November 12, 2009, the trial court issued a judgment entry adopting the magistrate's October 26, 2009 decision. On January 19, 2010, the matter came before the court on its own motion, and on January 21, 2010, the trial court issued a journal entry vacating its November 12, 2009 judgment entry.

{¶56} On February 8, 2010, the case came before the trial court for a hearing in response to Murzda's objections to the magistrate's October 26, 2009 decision, during which both parties were present and represented by counsel. The transcript of the September 8, 2009 trial was filed, and counsel for the parties presented their statements.

Following the hearing, the parties attended mediation. The parties reached a partial agreement on visitation issues and resolved transportation issues, but they did not reach an agreement on final custody or weekday/weekend visitation during the school year and those matters remained before the trial court for determination.

{¶57} On April 28, 2010, the trial court issued a judgment entry, denying Murzda's motion for designation as residential parent and/or shared parenting. The court found that pursuant to *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, in order for there to be a change in circumstances, the change must be a change of consequence. In regards to change in circumstances, the court found:

{¶58} "In the within matter, the Court notes that the mother wanted the exchange to take place in a busy public location because she was concerned for her safety. Her concern was based on fear of having baseless criminal charges filed against her by the child's father, who is a law enforcement officer. She testified that she believed both parties agreed to the location change. Father also asserted that mother did not comply with the Court order where minor child and father were to have a telephone conversation on Saturdays at 8:00 p.m. Mother testified that she had child call her father when the child requested but did not do regularly since she believed the mandatory section was removed from the agreement. Finally, father argued that mother did not notify him when child was home ill from school or had surgery. Mother denies the claims.

{¶59} "In regards to this issue, the Court does not find the alleged interference amounts to a consequential change. The testimony was replete with 'he said, she said' comments and amount to misunderstandings and miscommunications."

{¶60} In regards to Murzda's claim that Wheeler unilaterally modified the trial court's order, the trial court found that Wheeler asserted both parties agreed to the change and that this claim mirrors the change in circumstances argument and amounts to miscommunication between the parties.

{¶61} The trial court also found that pursuant to R.C. 3109.04(E)(2)(b), it had discretion to modify a shared parenting plan on its own motion but was not required to do so. If a consequential change in circumstances had occurred, then the magistrate would

have reviewed Murzda's proposed shared parenting plans, but in this case the change was inconsequential. The trial court affirmed the magistrate's ruling that the parties engaged in a continued pattern of behavior and that it is impossible to discern which party is at fault. Finally, the trial court found that "[Murzda] should have visitation with the minor child when his schedule permits in lieu of day care. The parties are encouraged to engage in reciprocal liberal visitation for their child's benefit."

## Change in Circumstances

{¶62} Murzda asserts one assignment of error on appeal:

{¶63} "The Court erred in Overruling the Father/Appellant's, Jason Murzda, Objection and/or Appeal to the Magistrate's Decision of October 26, 2009, as said decision that a change in circumstances had not occurred was an abuse of discretion and was contrary to the manifest weight of evidence."

{¶64} A trial court has broad discretion in its determination of parental custody rights. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Therefore, a trial court's custody determination which is supported by competent and credible evidence should not be disturbed unless it constitutes an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178; *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 603, 737 N.E.2d 551.

{¶65} With respect to an appellate court's duty of deference to the trial court in custody determinations, the Ohio Supreme Court has stated: "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided

by the presumption that the trial court's findings were indeed correct." *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. (Internal citations omitted.)

{¶66} R.C. 3109.04(E)(1)(a) governs modification of an existing court order allocating parental rights and responsibilities, and states:

{¶67} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: * * *

{¶68} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶69} Therefore, there are three steps that must be satisfied before a trial court can properly modify an existing decree to reallocate residential parental status: "(1) there must be an initial threshold showing of a change in circumstances, (2) if circumstances have changed, the modification of custody must be in the children's best interests, and, (3) any harm to the children from a modification of the plan must be outweighed by the advantages of such a modification." *Rohrbaugh*, supra, at 604.

{¶70} In this case, Murzda argues that the trial court erred when it found that there was no change in circumstances and subsequently did not conduct further analysis to determine the best interests of the minor child. Specifically, he contends that Wheeler's interference with his visitation rights supported a finding of a change in circumstances.

{¶71} The Ohio Supreme Court has held that for a trial court to make the threshold finding of a change in circumstances, "the change must be a change of substance, not a slight or inconsequential change." *Davis*, supra, at 418. "It is a well-settled rule in Ohio that a custodial parent's interference with visitation by a noncustodial

parent may be considered as part of a 'change of circumstances' which would allow for modification of custody." *Holm v. Smilowitz* (1992), 83 Ohio App.3d 757, 773, 615 N.E.2d 1047.

**{¶72}** Here, the trial court found that no change in circumstances occurred, considering Murzda's allegations that Wheeler interfered with his visitation and his claim that Wheeler unilaterally changed the court order. In regards to the interference with visitation claim, the trial court stated that it "does not find the alleged interference amounts to a consequential change. The testimony was replete with 'he said, she said' comments and amount to misunderstandings and miscommunications." The trial court also found that the allegations that Wheeler unilaterally changed the trial court order amounted to miscommunication between the parties.

**{¶73}** We find ample evidence in the record supporting the trial court's finding that much of the testimony amounted to "he said, she said" comments. For example, Murzda claimed that Wheeler failed to notify him when V.L.M. had surgery, while Wheeler denied this claim. Murzda claimed that Wheeler taught the minor child to call a scarecrow a derogatory term referencing his girlfriend, whereas Wheeler testified that she encouraged V.L.M. to love and respect Murzda. Wheeler also claimed that Murzda's girlfriend would flip her off and shove a camera into the child's face during exchanges, and that Murzda approved of his girlfriend's videotaping. Murzda admitted that his girlfriend videotaped but denied that she did it in this manner and stated that it was done for his protection. Murzda claimed that Wheeler refused to allow anyone other than him to pick up the child, whereas Wheeler denied this claim. While increased hostility by one parent which frustrates cooperation between the parties is a factor supporting a change in circumstances, these issues concern the credibility of the witnesses. *Davis*, supra, at 416-417. "The demeanor of the witness, the timing of his responses, his facial expressions and the like are matters bearing upon credibility and observable by the trier of fact, but not by an appellate court." *Rohrbaugh*, supra, at 607. Thus, appellate courts give deference to the trial court in determining the credibility of testimony. *Seasons Coal Co., Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273.

**{¶74}** The record likewise supports the trial court's findings that no consequential change in circumstances occurred and that the issues between the parties amounted to misunderstandings and miscommunications. The trial court first discussed Murzda's allegations that Wheeler interfered with his visitation. Murzda alleged that Wheeler denied him visitation on December 24, 2008 and on December 31, 2008 through January 1, 2009. During the trial, Wheeler testified that Murzda refused his visitation on December 24, 2008 and that she did not know if he received his visitation on December 31, 2008. Later testimony from both parties established that the problems with holiday visitation were due to Wheeler's refusal to perform the exchange at the preschool since it was closed for the holidays and the parking lot was vacant. Wheeler testified that she asked her attorney to contact Murzda's attorney to arrange for an alternate exchange location.

**{¶75}** Testimony of both parties establishes that the parties' attorneys communicated to try to agree on an alternate location. The record also contains Exhibits B, C, and F, the faxes sent between the attorneys discussing holiday visitation. Exhibit B is a fax from Wheeler's attorney to Murzda's attorney on December 30, 2008, stating that Wheeler would not drop off the child at the preschool parking lot because the school was closed for the holidays. Wheeler's attorney then requested that Murzda's attorney suggest a public and open location for the exchange. Exhibit C is a fax from Murzda's attorney to Wheeler's attorney on the same day, stating stated that Murzda was amenable to performing the exchange in the parking lot of Taco Bell in Struthers, and asked Wheeler's attorney to "Please advise immediately."

**{¶76}** According to Murzda's testimony, Wheeler had selected Taco Bell as the exchange location and he had agreed via Exhibit C, but then V.L.M. was not available for exchange at any of the locations, including the Taco Bell. However, the exhibits reveal that Murzda suggested Taco Bell as the location, not Wheeler. Wheeler claimed that she refused Taco Bell because she would not perform exchanges in Struthers due to false criminal charges. Wheeler also claimed that she made several calls to make arrangements for the holiday visitation. The exhibits do not show what, if any, response

was made to Exhibit C. Ultimately, this is a credibility determination between the parties and thus, we defer to the trial court's finding that these visitation exchange issues between the parties amounted to miscommunication.

{¶77} Murzda further argues that the trial court erred in not considering missed visitation prior to the court's October 21, 2008 judgment entry in its determination of whether a change in circumstances occurred. He claims that because the parties' in-court agreement provided that the visitation schedule would commence on September 12, 2008, the court should consider the missed visitation that occurred between September 12 and October 21, 2008. However, the April 28, 2010 judgment entry, from which Murzda appeals, does not specifically state that the trial court is only considering certain dates of missed visitation, but rather discusses that Wheeler wanted the exchange to take place in a public location and that she testified that she believed both parties agreed to the location change.

{¶78} We find that regardless of which visitation dates we consider, the evidence in the record does not support a finding of a substantive change of circumstances. During the hearing, testimony was given from both parties regarding eight dates in September and October of 2008 on which Murzda alleged that he did not receive visitation. All of these dates were Fridays and Mondays upon which Murzda was supposed to pick up V.L.M. for visitation at her preschool, and Murzda claimed that V.L.M. was not at the preschool for the exchanges on these dates. Although Wheeler initially testified that she never withheld visitation from Murzda, she later admitted to withholding visitation due to her concerns for the child's safety because Murzda was not returning V.L.M. after visitation in September. These issues are interrelated to the holiday visitation problems in that Wheeler refused to perform weekend exchanges in a vacant parking lot due to alleged false charges filed against her. As the trial court found, it is impossible to determine who is at fault in these circumstances. We find that these visitation issues further amount to credibility determinations between the parties and defer to the trial court's findings.

{¶79} Murzda also alleges that Wheeler withheld telephone contact that was

mandated by the court order. Interference with court-ordered telephone communication is one factor to be considered in a change of circumstances analysis. See *Gomez v. Gomez*, 7th Dist. No. 08 NO 356, 2009-Ohio-4809, at ¶24, 27. The trial court's judgment entry shows that it properly considered this factor and found that Wheeler had V.L.M. call Murzda when the child asked to do so, but did not have her call regularly because Wheeler believed that the mandatory section was removed from the court order. Similar to the problems with visitation, we believe that these issues concern the parties' credibility, which the trial court was better situated to judge. Thus, we defer to the trial court's judgment on this matter.

**{¶80}** Murzda also argues that since the court modified its prior order by awarding him more visitation time in its April 28, 2010 judgment entry, it did find a change in circumstances and erred in not performing a best interest analysis as required under R.C. 3109.04(E)(1)(a). This argument is meritless. Modification of visitation rights is governed by R.C. 3109.051, not R.C. 3109.04. *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 44-45, 706 N.E.2d 1218. A court need not find a change in circumstances before it revises a parent's visitation rights. Id at 45. Accordingly, the fact that the trial court increased Murzda's visitation does not mean that it found any change in circumstances such that it was required to perform a best interest analysis under R.C. 3109.04.

**{¶81}** Finally, Murzda contends that the court's April 28, 2010 judgment entry was contradictory because it stated that the alleged interference did not amount to a "consequential change," but later stated that Murzda failed to prove a "change in circumstances." However, as discussed supra, for a trial court to find a change in circumstances, "the change must be a change of substance, not a slight or inconsequential change." *Davis*, supra, at 418. Thus, it follows that if the trial court found no consequential change, then Murzda did not establish a change in circumstances. Accordingly, Murzda's assignment of error is meritless.

**{¶82}** In conclusion, although we consider the situation between the parties to be unfortunate circumstances, we ultimately conclude that the trial court did not abuse its discretion in determining that there was not a change in circumstances. Because this

case largely amounts to "he said, she said" testimony and credibility determinations, we stress that the trial court was in a better position to view the parties' testimony and demeanor in order to judge their credibility. The trial court's decision properly considered the statutory factors and was based upon the evidence in the record; thus, the trial court did not commit an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Vukovich, J., concurs.