[Cite as *In re S.B.J. v. Connolly*, 2021-Ohio-1161.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

IN THE MATTER OF S.B.J., JENNIFER JONES,

Plaintiff-Appellant,

v.

PATRICK CONNOLLY,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 20 MA 0010

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio, Juvenile Division
Case Nos. 2006 JI 0705, 2018 JC 930

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. David Engler*, Engler Law Firm, 181 Elm Road, N.E., Warren, Ohio 44483, for Plaintiff-Appellant and

*Atty. James Lanzo*, 4126 Youngstown-Poland Road, Youngstown, Ohio 44514, for Defendant-Appellee.

Dated:  March 30, 2021

_____

**D'Apolito, J.**

{¶1}   Appellant, Jennifer Jones ("Mother"), appeals from the December 2, 2019 judgment of the Mahoning County Court of Common Pleas, Juvenile Division, finding no change in circumstances.  On appeal, Mother asserts the juvenile court erred by not finding a change in circumstances; by ordering only a "limited" investigation from the guardian ad litem ("GAL") and prohibiting counsel from cross-examining the GAL; and by specifically stating that her allegations were "delusional."  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}   This matter began on July 18, 2006 with an order establishing parentage between Appellee, Patrick Connolly ("Father"), and S.B.J. ("minor child"), d.o.b. March 25, 2006.  On September 20, 2006, Father filed a complaint for transfer of custody, or in the alternative, for a shared parenting plan.  A GAL was appointed for the minor child.  Following a hearing, Father was granted companionship and ordered to pay child support.

{¶3}   The parties submitted a shared parenting plan on March 19, 2008, designating, inter alia, Mother residential parent for school purposes.  Following a hearing before the magistrate, the juvenile court adopted the shared parenting agreement, finding it to be in the best interest of the minor child.  On August 31, 2011, the parties filed an agreed motion to modify the shared parenting plan, designating Father residential parent for school purposes.  The court adopted the change in parental designation.

{¶4}   On October 21, 2014, Father filed a motion to modify the shared parenting plan/motion to modify child support.  The magistrate heard from the parties and modified the shared parenting plan to reflect the parties' recent agreement regarding parenting time and holidays.  The court also later granted Father's motion to modify child support.

{¶5}   On June 15, 2016, Mother filed a motion to reallocate parental rights and responsibilities alleging that the minor child has emotional problems which have become worse by living with Father.  Father filed an opposition.  On August 11, 2016, Father filed a motion to modify the medical and child support obligation.  In response, Mother filed a

motion to increase child support. On January 25, 2017, Mother filed an amended motion for reallocation/amended motion to increase child support. The GAL filed a report recommending that the shared parenting plan remain unchanged. The matters were heard before the magistrate. On April 28, 2017, the magistrate filed a decision finding no change in circumstances and recommended overruling Mother's motions and granting Father's motions.

{¶6} On May 4, 2017, Father filed a motion to terminate shared parenting/motion for psychological evaluation/motion for custody. Father also filed an objection to the magistrate's decision alleging that the magistrate miscalculated the child support deviation for shared parenting time. Mother also filed an objection. The juvenile court adopted the magistrate's decision.

{¶7} On June 6, 2018, Mahoning County Children Services Board ("MCCSB") intervened due to allegations that the minor child was emotionally and mentally abused. Thereafter, Mother filed a motion for change of parental rights.

{¶8} The parties obtained psychological evaluations from the Forensic Psychiatric Center of NE Ohio. Mother was diagnosed with delusional disorder. The court conducted an in-camera interview with the minor child on July 31, 2018. The GAL filed an amended report recommending that Mother's companionship time continue.

{¶9} On August 10, 2018, MCCSB filed an ex parte complaint alleging that the minor child appears to be a dependent child pursuant to R.C. 2151.04(C). A MCCSB caseworker recommended that custody be granted to Father with an order of protective supervision. The juvenile court overruled the ex parte complaint, ordered that the minor child be returned to Father pursuant to the shared parenting plan, and granted supervised visitation to Mother.

{¶10} Father filed another motion to terminate child support on October 11, 2018. Following a hearing, the juvenile court found the minor child to be a dependent child, granted Father's motion to terminate child support, ordered that his payments be held in escrow, and ordered expanded visitation to Mother. The parties agreed to continue following a shared parenting plan with Father as residential and custodial parent.

{¶11} On January 22, 2019, Mother filed a motion requesting the juvenile court to modify Father's child support obligation. On May 10, 2019, Mother filed a motion to

terminate current companionship schedule and restore her as residential parent as well as emergency motions to place the minor child with her and for an in-camera interview with the minor child. The court set hearing dates and granted the emergency motion for an in-camera interview. However, on June 13, 2019, the court found Mother failed to comply with previous orders and dismissed her motions, cancelled the change of placement hearing, and cancelled the interview.

{¶12} On June 28, 2019, Mother filed renewed requests to terminate the current companionship schedule and restore her as residential parent, to immediately place the minor child with her, and to have an in-camera interview conducted. Mother alleged a change in circumstances and claimed the minor child wishes to reside with her. Following a hearing regarding modification of child support, the juvenile court decreased Mother's arrearage.

{¶13} A hearing was held on November 19, 2019. Mother claimed the minor child's medical, physical, and emotional needs are not being met by Father. Father denied neglecting or abusing the minor child physically or emotionally. Father also denied making disparaging remarks about Mother. David Noll, a psychotherapist and licensed independent social worker, testified that the minor child has made conflicting statements about both parents during counseling. Noll did not find any evidence that the minor child had been neglected or abused by Father. The juvenile court directed the GAL to do a limited investigation.

{¶14} On November 22, 2019, the parties filed written closing arguments as to whether there has been a change in circumstances since the prior decree. On December 2, 2019, the juvenile court found no change in circumstances and denied Mother's motions.

{¶15} Mother filed a timely notice of appeal and raises three assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN NOT FINDING A CHANGE OF CIRCUMSTANCES AS REQUIRED BY *DAVIS V. FLICKENGER* (1997), 77 OHIO ST.3D 415.**

The juvenile court exercises its jurisdiction in child custody matters in accordance with R.C. 3109.04. R.C. 2151.23(F)(1). In determining a motion for reallocation of parental rights, R.C. 3109.04(E)(1)(a) provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

[(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.]

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

Pursuant to the statute, in order for a court to reallocate parental rights and responsibilities and change the residential parent, the trial court is required to find that: (1) a change in circumstances has occurred since the prior custody order; (2) the change in custody is in the child's best interests; and (3) the benefits of the change in custody outweigh the harm caused by the change. *Miller v. Miller*, 7th Dist. Jefferson No. 18 JE 0007, 2018-Ohio-4018, ¶ 16, citing *Vella v. Vella*, 7th Dist. Jefferson No. 10-JE-7, 2011-Ohio-

Case No. 20 MA 0010

1182, ¶ 23. Additionally, R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest. *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604, 737 N.E.2d 551 (7th Dist.2000).

R.C. 3109.04(F)(1) sets forth a non-exclusive list of factors to be considered in determining the best interest of the child. * * *

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

[(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense * * *.
;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;]

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

A determination of legal custody by the juvenile court will only be reversed for an abuse of discretion. *In re C.A.C.J.*, 7th Dist. Belmont No. 18 BE 0010, 2018-Ohio-4501, ¶ 7, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 421, 674 N.E.2d 1159 (1997). The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

As "(c)ustody issues are some of the most difficult and agonizing decisions a trial judge must make," the trial court is given "wide latitude in considering all the evidence." *Davis* at 418. We must presume that the trial court's findings are correct because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much eviden[ce] in the parties' demeanor and attitude that does not translate to the record well." *Davis* at 419.

*Matter of C.R.W.*, 7th Dist. Jefferson No. 19 JE 0002, 2019-Ohio-2642, ¶ 28-32.

{¶16} In this case, Psychotherapist Noll, Mother, and Father testified at the November 19, 2019 hearing.

{¶17} Noll testified on direct examination as to Mother's accusations as well as his conversations with the minor child.  Noll stated, "I didn't think that anything I was hearing [from Mother] rose to abuse or neglect in the sense that required me to make * *

\* a mandatory report" with MCCSB. (11/19/2019 Hearing T.p., p. 30). Regarding the previous 11 meetings he had with the minor child, Noll could not form an opinion as to whether or not the child was being coached to say certain things by either parent. (*Id.* at 32). Noll could not offer anything that would be considered a fact or anything that he thought would be helpful to the juvenile court. (*Id.* at 36).

**{¶18}** On cross-examination, Noll conceded that he had formed no opinion in this matter. (*Id.* at 42). Noll further indicated that the minor child was not a "fragile child" and that he did not believe either parent was exercising influence over the minor child in an "insidious way." (*Id.* at 43).

**{¶19}** On re-direct examination, Noll did not believe the minor child has any "mental health issue." (*Id.* at 48). For insurance purposes and after seeing the minor child, Noll made a determination of "adjustment disorder diagnosis unspecified." (*Id.* at 52). Noll explained that "adjustment disorders" occur when something is "different and typically short term." (*Id.* at 53). Noll stated an "adjustment disorder unspecified, for instance, [is when someone] this morning \* \* \* didn't take the garbage out, and forgot." (*Id.* at 52). Noll continued to explain that "[a]djustment disorders are - - don't meet criteria for like major depressive disorder, anxiety disorder, generalized anxiety disorder, bipolar disorder." (*Id.* at 53).

**{¶20}** Mother testified on direct examination that she had brought these motions because she was concerned about the minor child's safety. (*Id.* at 101). Mother claimed Father monitors the minor child's conversations with her as well as visitation. (*Id.* at 102-104). Mother also alleged physical abuse of the minor child by Father. (*Id.* at 105-106). Mother testified regarding various journals allegedly written by the minor child revealing his fear of abuse; allegations that Father coached and forced him to lie; his wishes to reside with Mother; and that "everything [Mother] said is correct." (*Id.* at 106-111; Plaintiff's Exhibits 1-4). Mother said she "encouraged [the minor child] to express his feelings and his concerns." (*Id.* at 111). Mother questioned Father's parenting because he did not think it was necessary to seek medical attention for the minor child after the boy struck his head on a mat during a wrestling match. (*Id.* at 111-119). Mother does not feel that Father is addressing their son's "emotional needs" and is concerned for his "physical well-being." (*Id.* at 121-122).

**{¶21}** On cross-examination, Mother testified that the minor child is a good, "A, B" student. (*Id.* at 129). Mother also said the minor child is "very popular" with lots of friends, is a well-adjusted kid, and "handles stress quite well." (*Id.* at 132-133).

**{¶22}** Father testified on direct examination that he restricted the minor child's Xbox use because the child copied someone's math homework and lied about it. (*Id.* at 95-96). Father said he did not know the minor child was seeing Noll. (*Id.* at 96). Regarding Mother's visitation, Father stated that Mother gets "at least two weekends" per month. (*Id.* at 97).

**{¶23}** On cross-examination, Father testified as to Plaintiff's exhibits, the handwritten notes allegedly written by the minor child. Father did not recognize the handwriting to be that of the minor child. (*Id.* at 56-58, 82). Father said he never made "disparaging" remarks about Mother. (*Id.* at 62). Father indicated that the minor child has expressed "fear of his mother" to him. (*Id.* at 71). Regarding the allegation of "coaching" the minor child, Father said it is "not a concern" because "[t]hat doesn't happen." (*Id.* at 76). Father tells the minor child to "tell the truth." (*Id.*) Father denied having the minor child install malware on Mother's computer. (*Id.* at 85-86). Father does not believe the minor child needs to continue counseling with Noll. (*Id.* at 86). Father believes Mother has a "mental illness" but has not "directly" shared that opinion with the minor child. (*Id.* at 87). Father indicated the minor child is "worried" that Mother will move to Las Vegas. (*Id.* at 88-89).

**{¶24}** On re-direct examination, Father testified he has not noticed any "adverse changes" in the minor child's life. (*Id.* at 160). Father described his son as "[h]appy," "outgoing, talkative," "popular," "has friends," and is involved in "wrestling" and "football." (*Id.* at 160-161).

**{¶25}** The foregoing testimony collectively establishes that the minor child is doing well in Father's home. The minor child is intelligent, receives good grades and does well in school, is popular, has lots of friends, plays sports, and is well-adjusted. Accordingly, the juvenile court did not abuse its discretion in finding no change in circumstances so as to warrant a modification of parental rights and responsibilities and, thus, was not required to proceed to a best interest analysis. *Matter of C.R.W., supra,* at ¶ 28-32; *In re V.L.M.,* 7th Dist. Mahoning No. 10 MA 82, 2011-Ohio-6641, ¶ 2. The court's decision is not

against the manifest weight of the evidence. *In re C.A.C.J.,* 7th Dist. Belmont No. 18 BE 0010, 2018-Ohio-4501, ¶ 1.

**{¶26}** Mother's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED BY ORDERING ONLY A "LIMITED" INVESTIGATION FROM THE GUARDIAN AD LITEM AND PROHIBITING COUNSEL FROM CROSS-EXAMINING THE GUARDIAN AD LITEM.**

**{¶27}** Regarding the claims made in this assignment of error, Mother did not object below.

"An appellant's failure to object at trial waives all but plain error." *Fearer v. Humility of Mary Health Partners*, 7th Dist. No. 06 MA 84, 2008-Ohio-1181, 2008 WL 697761, ¶ 119. Plain error is present when "there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings." *In re T.J.W.*, 7th Dist. No. 13 JE 12, 13 JE 13, 13 JE 14, 2014-Ohio-4419, 2014 WL 4959150, ¶ 11. Plain error review is not favored in civil cases and should only be used in the "extremely rare case involving exceptional circumstance where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Kirin v. Kirin*, 7th Dist. No. 08 MA 243, 2011-Ohio-663, 2011 WL 497080, ¶ 19, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), at paragraph one of the syllabus.

*Andes v. Winland*, 7th Dist. Belmont Nos. 15 BE 0060 and 15 BE 0080, 2017-Ohio-766, ¶ 45.

**{¶28}** "Ordinarily, a GAL's report is not considered evidence, but is merely submitted as additional information for the court's consideration, similar to a pre-sentence

investigation report in a criminal proceeding." *Matter of R.J.E.*, 11th Dist. Portage No. 2016-P-0025, 2017-Ohio-886, ¶ 43.

{¶29} Mother's main argument centering around the general proposition that a testifying witness is subject to cross-examination is correct. In support of her position, Mother cites to several cases involving the following: termination of parental rights; violation of Rules of Superintendence; writ of mandamus; instances where a GAL did not attend a hearing and/or submit a report; a matter where a court failed to hold a hearing in a contempt proceeding; and where a GAL actually testified. *See In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368; *Allen v. Allen*, 11th Dist. Trumbull No. 2009-T-0070, 2010-Ohio-475; *Schill v. Schill*, 11th Dist. Geauga No. 2002-G-2465, 2004-Ohio-5114; *In re Gruber*, 11th Dist. Trumbull No. 2007-T-0001, 2007-Ohio-3188; *In re Seitz*, 11th Dist. Trumbull No. 2002-T-0097, 2003-Ohio-5218; *Burnip v. Nickerson*, 7th Dist. Columbiana No. 07-CO-42, 2008-Ohio-5052; *Kelley v. Kelley*, 175 P.3d 400, 2007 OK 100 (Okla.2007).

{¶30} In the case at bar, the GAL did not testify under oath. Rather, the juvenile court took testimony from Psychotherapist Noll, Mother, and Father, who were all subject to cross-examination. The basis for the court's order of a limited investigation appears to be the bifurcation of the hearing on changing circumstances from a potential hearing on the best interest of the child. At the conclusion of the case, after both sides rested, the court stated the following:

> Okay. As to this portion of the hearing, the Rules of Evidence do not apply. This is a guardian ad litem report. This is specifically excluded. I'm also - - I have not placed you [the GAL] under oath and I am not going to have you submit to cross examination by the parties. I told you for the limited purpose I wanted to know the present circumstance of the child's physical, mental, psychological conditions. So that's what I am interested in today.
>
> Is this child suffering? Has he been the victim of abuse and still being abused? Is he suffering neglect? Is he falling into dependency?

(11/19/2019 Hearing T.p., p. 175-176).

Case No. 20 MA 0010

**{¶31}** Regarding the oral report, the GAL said, "I do not believe that [the minor child] has been abused, neglected or is dependent. I believe his condition is the same as it was when we last left court on or about December 13, 2018." (*Id.* at 176). The GAL opined there is "no emergency" for the minor child. (*Id.*)

**{¶32}** There is nothing about the GAL's limited investigation or oral report that "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Andes, supra,* at ¶ 45. Notwithstanding the GAL's limited investigation or oral report, no change in circumstances was established by the collective testimony of Psychotherapist Noll, Mother, and Father, as addressed in Mother's first assignment of error. Based on the facts presented in this case, the juvenile court did not commit plain error. *Id.*

**{¶33}** Mother's second assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED SPECIFICALLY IN STATING THAT THE APPELLANT/MOTHER'S ALLEGATIONS WERE "DELUSIONAL" SINCE THE MINOR CHILD HAD WRITTEN STATEMENTS, AND THERE WAS NO EVIDENCE INTRODUCED AT THE HEARING THAT WOULD HAVE PERMITTED THE JUDGE TO MAKE SUCH AN INCENDIARY PSYCHOLOGICAL STATEMENT OF FACT.**

**{¶34}** Mother seems to allege that the juvenile court should have appointed a psychiatric expert to evaluate her mental health, a claim never raised below and thus deemed waived on appeal. *See Gonzalez v. Perez*, 7th Dist. Carroll No. 13 CA 893, 2015-Ohio-1282, ¶ 17; *see also In re Shaeffer Children*, 85 Ohio App.3d 683, 691 (3rd Dist.1993) (due process does not require the appointment of a psychiatric expert in every permanent custody proceeding where a parent's mental health is made an issue).

**{¶35}** Regarding the use of the adjective, "delusional," Mother testified on cross-examination as follows:

[QUESTION] Are you aware of the impressions, the diagnoses of Dr. Thorne, relating to the 2018 psychological evaluation ordered by this court?

[ANSWER] I never saw anything official. I know what Dr. Thorne said when he came to court that day. And he seems to think that I'm delusional because [Father] coaches [the minor child] what to say.

[QUESTION] And in addition to the delusional disorder from which Dr. Thorne believes you suffer, are you aware he also - - in addition to the PTSD that you had admitted to suffering from, are you aware that he believed you exhibited signs of paranoia, psychological pain, anxiety and depression?

[ANSWER] That was never conveyed to me, but I could see why he would think I'm delusional for certain.

(11/19/2019 Hearing T.p., p. 141).

{¶36} On re-cross examination, Mother testified:

[QUESTION] Your testimony is that you believe that my client manufactured stories to tell your son to tell you so that you would seem delusional to a psychologist?

[ANSWER] Yes.

[QUESTION] And how often did this happen?

[ANSWER] Last summer.

[QUESTION] Last summer?

[ANSWER] Prior to CPS getting involved and my son getting taken off of me, yes.

[QUESTION] So prior to your son getting involved, my client made up a story and told your son this story?

[ANSWER] He creates stories.

Case No. 20 MA 0010

[QUESTION] I'm sorry, created a story. Relayed the story to your son to tell you so that you would tell it to someone else so that you would seem delusional to that person?

[ANSWER] Yes.

(11/19/2019 Hearing T.p., p. 144).

**{¶37}** Thus, the "delusional" reference and Dr. Thorne's diagnosis came up through Mother's own testimony. In addition to her testimony, the record reveals the parties obtained psychological evaluations from the Forensic Psychiatric Center of NE Ohio in which Mother was diagnosed with delusional disorder. Following the November 19, 2019 hearing, the juvenile court found no change in circumstances and denied Mother's motions. The court specifically stated, "Mother's allegations in these latest motions are of the same nature as her previous unfounded, delusional allegations she made against Father." (12/2/2019 Judgment Entry, p. 3). Based on the facts presented and the record before us, the juvenile court did not commit reversible error by using the "delusional" adjective to describe Mother's allegations against Father.

**{¶38}** Mother's third assignment of error is without merit.

## CONCLUSION

**{¶39}** For the foregoing reasons, Mother's assignments of error are not well-taken. The judgment of the Mahoning County Court of Common Pleas, Juvenile Division, denying Mother's motions and finding no change in circumstances is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.

Case No. 20 MA 0010

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, Juvenile Division, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**