[Cite as *PNL Industries Co. v. Am. Painting Co., Inc.*, 2013-Ohio-1432.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| PNL INDUSTRIES CO., | ) | |
| | ) | CASE NO. 12 MA 17 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| AMERICAN PAINTING CO., INC., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas
                                 Court, Case No. 05 CV 4601.

JUDGMENT:                        Affirmed.

APPEARANCES:
For Plaintiff-Appellee:          Attorney Matthew Giannini
                                 1040 South Commons Place
                                 Suite 200
                                 Youngstown, OH  44514

For Defendants-Appellant:        Attorney Brent Baker
                                 Newman, Olson & Kerr
                                 11 Federal Plaza Central
                                 Suite 1200
                                 Youngstown, OH  44503

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                 Dated: March 25, 2013

DeGenaro, P.J.

{¶1} Defendants-Appellant, American Painting Co., Inc., appeals the decision of the Mahoning County Court of Common Pleas entering judgment in favor of Plaintiff-Appellee, PNL Industrial Co., in the amount of $31,684.78 in a breach of contract case. On appeal, American challenges several aspects of the trial court's judgment, all relating to whether the trial court's damages award was against the manifest weight of the evidence. Specifically, the original contract price and the damage calculation, including additional work and offsets for repairs and unused materials.

{¶2} American's arguments are meritless. When conflicting evidence is susceptible to more than one interpretation, evaluating witness credibility is a controlling factor, and left to the trier of fact who is in the best position to make that determination. We cannot say the fact-finder clearly lost its way; there is competent, credible evidence supporting the trial court's decision. As this was not an exceptional case, we must defer to the findings made by the trier of fact. The trial court's damages award was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} This case arises from a dispute regarding a bridge painting project in Johnstown, Pennsylvania. American was a subcontractor for Brayman Construction Corporation, and American subcontracted work on the project to PNL. On December 10, 2005, PNL filed a complaint against American and Brayman for breach of contract. PNL alleged that it completed painting services pursuant to the terms of its subcontract agreement with American, but that American had failed to make full payment to PNL. As a result of this breach, PNL alleged that it incurred damages in excess of $31,684.78. Following several continuances, a bench trial before the magistrate began on November 10, 2009.

{¶4} Emanual Hazimihalas, the owner of PNL, testified first for PNL. In the summer of 2002, he contacted his friend Tony Katsourakis, the owner of American, to inquire about work opportunities. Tony informed Emanuel about the bridge painting project in Johnstown. Emanual testified that the next day, he went to Tony's house and

they discussed the amount of money for the job and entered into an agreement for this project. PNL started the project in August 2002 and completed the work by the end of September 2002. After PNL finished the project, American paid PNL, but Emanual claimed that it did not pay the full amount for the work.

{¶5} Emanual also testified regarding a document labeled "Subcontract Agreement, Unit Price Contract". This subcontract agreement was dated August 2, 2002, and it stated that it was between American and PNL for the Johnstown project. On page two, the following was handwritten: "Paint Existing Structural Steel, Lump Sum $265,000." This document was signed by a representative from American but contained no signatures from PNL. When asked to identify this document, Emanual stated, "It's the America Painting, they no pay the PNL."

{¶6} On cross, Emanual confirmed that the subcontract agreement was drawn up prior to PNL beginning work on the project. He denied that he asked Ethel Katsourakis, American's secretary, to draw up the document after PNL completed the project to provide to his bonding company. He then stated: "I asked them in the beginning but they refuse to give it to me. So finally they give it to me at the end of the job."

{¶7} Nick Hazimihalas, Emanual's son and part-owner of PNL, testified next. He explained that the agreement between PNL and American was for painting one bridge in Johnstown for $285,000. Regarding compensation for PNL, Nick explained that American would handle the payroll, materials, and supplies, and he stated that "whatever was left over would be due to us at the end of the project."

{¶8} When PNL finished the project, the Brayman supervisor approached Nick regarding PNL performing additional concrete sealing work. Tony told Nick to try to negotiate a price for the additional work that would be enough money for PNL and American. Nick negotiated a price of $22,500, which was not enough to pay both PNL and American. He explained that PNL performed the concrete sealing work, Brayman paid American, and then American was supposed to pay the PNL workers at an hourly rate. However, Nick explained that American deducted its costs for payroll, withholdings, and motels for the concrete sealing work from the original subcontract price, which was

incorrect because the additional work was not part of the original contract for $285,000.

{¶9} Nick identified Plaintiff's Exhibit 3 as a document he created to show what he believed American owed PNL based upon the last accounting of the costs and balance due that American provided to PNL. He identified Plaintiff's Exhibit 4 as one of the accountings that PNL received from American; he explained that it showed American's costs on the project, including payroll, materials, and hotel charges.

{¶10} Exhibit 3 showed the subcontract amount of $285,000 with $208,030.68, the amount of cost, subtracted. Then $12,000 was subtracted from that amount because PNL had rented American's recycling unit for the project, but American had forgot to charge PNL for the rental. Then $4,500 and $1,009.12 were added because American had charged PNL in those amounts for repairs to the recycling unit. American's employee had operated the unit, and PNL had paid that employee. Then $14,839.32 was added as the amount that American had incorrectly charged PNL for the withholdings and payroll for the concrete sealing work. Then $6,975 was added for steel grit; Nick explained that American gave PNL steel grit to use on the project, but PNL only used half of the grit and delivered the remainder to American. PNL never received credit for this steel grit. Totaling these figures, the balance due to PNL was $92,292.76. Then the two payments that American made to PNL for $52,411.77 and $8,196.21 were subtracted. The final balance that American owed PNL totaled $31,684.78.

{¶11} After the close of Nick's testimony, the trial court admitted Plaintiff's Exhibits 1, 3, and 4, and PNL rested.

{¶12} Ethel Katsourakis, American's secretary and treasurer, was American's sole witness. She was not present when Emanual and Tony were negotiating the agreement. She explained that she wrote the checks for the payroll and other expenses for the Johnstown project. For payroll expenses, she testified that Nick would call her and tell her the hours worked. American introduced a large number of these checks and their related invoices as exhibits, and Ethel testified based upon these exhibits. Relevant to this appeal, she wrote a check to Advanced Recycling for vacuum hoses for $1,009.12. She later admitted that this check was for a repair of American's equipment. She also

later testified that she wrote a check for $4,500 for repairs to the blower, as listed on Plaintiff's Exhibit 4, but she did not have the cancelled check for this charge.

{¶13} Ethel also wrote a check to Ervin Industries for $10,317. The invoice associated with this exhibit showed that this charge was for the steel grit used on the project. Ethel originally accounted this full amount as a cost to the project, but she later discovered that PNL had returned some of the grit to American, and she credited PNL for $5,731.68. The invoice contained her handwritten calculation of the amount of credit American owed PNL for the grit. Regarding the recycling unit, Ethel testified that she charged PNL $12,000 for the rental at the completion of the project. She also testified that American and PNL did not have a rental agreement for the recycling unit.

{¶14} When PNL completed the Johnstown project, Ethel determined the balance due to PNL by subtracting American's costs for the project from the contract price, which left a balance of $52,411.77. She issued two checks to PNL: on November 15, 2002 for $52,411.77 and on December 2, 2002 for $8,196.21.

{¶15} Ethel testified that she prepared the written subcontract agreement after PNL completed the Johnstown project. Emanual asked her to prepare the agreement because he needed documentation for his bonding company. She explained that she backdated the document to August 2nd to make it look good for the bonding company. She signed the document and told Emanual it was not valid until he signed it, but he did not sign it.

{¶16} On cross, Ethel agreed that American was supposed to compensate the PNL workers for the additional work they performed after completing the bridge painting project; however, she denied that in her accounting she subtracted that compensation from the original contract price. She further agreed that she was not present for the negotiations and did not know the original or subsequent contract prices, but she presumed that the two combined contracts totaled $285,000.

{¶17} Nick then testified on rebuttal that American was supposed to compensate PNL approximately $14,800 for the concrete sealing work. Further, he stated that the $4,500 charge for repairs to the blower was for the recycling unit. Nick believed that

American should be responsible for these repairs. On rebuttal cross-examination, Nick admitted that he was not present when Emanual and Tony negotiated the original agreement. Emanual then testified on rebuttal that when he negotiated the original contract with Tony, the agreed-upon amount was $285,000.

{¶18} On January 12, 2010, the magistrate issued a decision finding that PNL was entitled to judgment as prayed for in its complaint. Based upon the evidence presented at trial, the magistrate found that an enforceable oral contract existed between PNL and American for $285,000 on the initial subcontract and for American to pay PNL workers an hourly wage on the subsequent subcontract. The magistrate concluded that American had failed to present any reliable evidence to support its contention that the initial contract price was $265,000 or that its final payments to PNL for the subcontracts were subject to offset for costs.

{¶19} On January 25, 2010, American filed objections to the magistrate's decision challenging his determination of the initial contract price and that American was not entitled to any offsets for its costs. On August 23, 2011, the trial court issued a judgment entry sustaining American's objections and remanding the matter to the magistrate for a determination of whether American was entitled to an offset for expenses and other charges.

{¶20} On remand before the magistrate on October 5, 2011, the magistrate directed the parties to submit supplemental briefs regarding offsets to the recommended award of $31,684.78. However, the record does not contain a transcript of this hearing and the hearing does not appear on the docket sheet. PNL filed a supplemental brief on October 14, 2011. On October 19, 2011, American filed its brief, arguing that its costs should reduce the damages award and refuting PNL's claims that it should receive damages for the concrete sealing work, steel grit, and repairs to the recycling unit.

{¶21} On October 28, 2011, the magistrate issued an amended decision finding that American was not entitled to offsets for repairs to the recycling unit, delivery costs for returning the steel grit, or charges for the concrete sealing work. The magistrate further concluded that it was unreasonable to find that PNL would agree to pay for repairs for the

leased equipment or to find that PNL would agree to assume costs for delivery of the remainder of American's steel grit. The magistrate found that the record lacked evidence to establish that either of those terms were negotiated and contemplated in the parties' oral agreement. Accordingly, the magistrate found that judgment should be awarded to PNL in the amount of $31,684.78.

**{¶22}** On November 10, 2011, American filed objections to the amended magistrate's decision. PNL opposed these objections on December 9, 2011, and then American filed a response on December 22, 2011. On January 10, 2012, the trial court issued a judgment entry overruling American's objections and affirming the magistrate's amended decision. The court determined that there was no just cause for delay.

## Trial Court's Determination of Damages

**{¶23}** American raises three assignments of error on appeal. Because all three concern the trial court's determination of damages, they will be discussed together:

**{¶24}** "1.     The judgment of the trial court is an abuse of discretion and against the manifest weight of the evidence because the evidence presented at trial clearly established that the appellant did not offset appellee's final payment for the cost of unused steel grit."

**{¶25}** "2.     The trial court's entry of judgment in favor of appellee is an abuse of discretion and against the manifest weight of the evidence because the trial court found credible, inconsistent and unreliable testimony regarding the original contract price."

**{¶26}** "3.     The trial court's entry of judgment in favor of appellee is an abuse of discretion and against the manifest weight of the evidence because the evidence presented at trial by both parties clearly established that final payment to appellee was subject to offsets for costs advanced by appellant and the court gave no consideration to the extensive documentary evidence substantiating those costs which substantially reduce or eliminate appellee's claim for damages."

**{¶27}** American frames its assignments of error as challenging the trial court's judgment as both an abuse of discretion and against the manifest weight of the evidence. However, American is asking this court to weigh the evidence to determine whether it

supports the trial court's determination of the original contract price and calculation of the damages award. Thus, manifest weight is the appropriate standard of review.

{¶28} The Ohio Supreme Court has recently clarified the standard of review used when a party challenges the verdict as against the manifest weight of the evidence in a civil case. The Court explained that the standard in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), a criminal case, also applied to civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶17-23. As the *Thompkins* Court explained:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶29} In performing a manifest weight review, appellate courts must be mindful of the presumption in favor of the trier of fact. "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶21, quoting *Seasons Coal Co., Inc. v. City of Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). fn. 3. Further, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

### Original Contract Price

{¶30} American argues that competent, credible evidence supported a finding that the parties originally contracted for a price of $265,000, not $285,000. American argues

that Emanual's testimony on direct examination supports a finding that the parties contracted for $265,000, but changed his testimony on rebuttal, testifying that the contract price was $285,000 after Nick testified the contract price was $285,000. American asserts that because Nick admitted he was not present for the negotiations between Emanual and Tony, this means that Emanual's changed testimony is not credible.

**{¶31}** On direct examination, when asked to identify Plaintiff's Exhibit 1, the subcontract agreement, Emanual replied, "It's the America Painting, they no pay the PNL." He confirmed that this was for the Johnstown project. He also confirmed that the lump sum of $265,000 was handwritten in on page two. On cross, Emanual agreed that this document was drawn up prior to PNL beginning work on the Johnstown project, but he denied that he asked Ethel to draft the document after PNL completed the project to give to his bonding company. He then testified that he asked for the document at the beginning of the project, but American refused and did not give it to him until the end.

**{¶32}** Emanual did not directly testify as to the contract price until rebuttal direct examination. His testimony on direct examination could be interpreted as agreeing that the contract price was $265,000, but it could also be interpreted as simply stating that $265,000 was the price written on the subcontract agreement that American created but PNL did not execute. Further, while Emanual's testimony did conflict with Ethel's testimony regarding when the subcontract agreement was created and for what purpose, this inconsistency does not completely undermine Emanual's credibility. The trial court could have found him to be a credible witness and believed his testimony on the contract price, especially as he was the only witness who was present during contract negotiations.

**{¶33}** Moreover, the trial court could have determined that the subcontract agreement was not credible evidence of the original contract price. The document was only signed by a representative of American, not by anyone from PNL. Ethel was not present during the negotiations of the agreement, and she admitted that she drafted the document after PNL completed the project but backdated it to August 2002.

**{¶34}** There is competent, credible evidence supporting the trial court's decision.

As the facts are susceptible to more than one interpretation, witness credibility is a controlling factor, left to the trier of fact who is in the best position to make that determination. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. As we cannot say the trier of fact clearly lost its way, we must defer to those findings. *Eastley* at ¶21. Therefore, the trial court's determination of the original contract price was not against the manifest weight of the evidence.

**Damages**

**{¶35}** Next, American argues that the damages award was incorrect because the evidence at trial established that American did not offset its payment to PNL by the cost of the unused steel grit; rather, it established that American had properly credited PNL for this grit.

**{¶36}** The record contains conflicting evidence on the issue of the unused steel grit. While both parties agreed that PNL had only used a portion of American's steel grit and had returned the remainder to American, they disagreed on the amount of credit PNL was entitled to for that remainder and whether American had credited PNL. Nick claimed that American still owed PNL $6,975 for the steel grit. He included this amount on his calculation of damages in Plaintiff's Exhibit 3. In contrast, Ethel testified that American owed PNL $5,731.68 for the grit and had paid PNL this credit. She had handwritten the calculation she used to determine this amount on the invoice for the steel grit.

**{¶37}** Thus, due to this conflicting evidence, the trial court had to make the determination of what American owed PNL for the steel grit. The evidence could support a finding that American owed PNL $6,975 or that American had already credited PNL for the grit in the correct amount of $5,731.68. Although American introduced Ethel's calculation of the amount owed to PNL for the grit, ultimately this determination was one of credibility for the trier of fact. *See State v. DeHass*, supra. Again, as discussed above, since the evidence is susceptible to more than one interpretation and those findings subject to deference upon review except for exceptional cases, the trial court's findings regarding the grit is not against the manifest weight of the evidence. *Thompkins, Eastley supra*.

{¶38} Finally, American challenges the trial court's overall damages determination, arguing that the trial court failed to consider its credible evidence of the offsets for costs to the final payment, which would either substantially reduce or eliminate PNL's damages claims. It further argues that the trial court erred in not allowing offsets from its final payment for the concrete sealing work and for the repairs to the recycling unit.

{¶39} "[T]he general measure of damages in a contract action is the amount necessary to place the nonbreaching party in the position he or she would have been in had the breaching party fully performed under the contract." *Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523, ¶62.

{¶40} The trial court accepted PNL's damages calculation, which was based upon Nick's testimony and Plaintiff's Exhibit 3. American contends that the trial court did not properly consider Ethel's testimony regarding the costs of the Johnstown project in its damages award. However, Plaintiff's Exhibit 3 does account for American's costs in the amount of $208,030.68. Nick took this amount from Plaintiff's Exhibit 4, which lists this figure on the first page as the total costs of materials and payroll, which are the same types of expenses that Ethel testified to during trial.

{¶41} On the last page of Exhibit 4, American adds an additional $22,046.50 in costs; however, $12,000 of this amount was for the recycling unit rental, which Nick accounted for in his damages calculation. Moreover, PNL disputes the remainder of these costs. For example, PNL objected to Ethel's testimony that she charged $800 as a cost of the project for filters that Emanual took from American's warehouse, and the trial court sustained that objection. Thus, the trial court found Nick's computation of the damages to be credible, and this finding is not against the manifest weight of the evidence.

{¶42} As to the payment for the concrete sealing work, the record contains conflicting evidence on the amount American owed PNL and whether American paid the workers for this additional work. Nick testified that American was supposed to compensate PNL approximately $14,800 for the concrete sealing work, but that it

incorrectly charged the payroll and withholdings for this work against the original contract price. Nick added $14,839.32 on Plaintiff's Exhibit 3 as the amount that American incorrectly charged to PNL. However, Ethel denied that she improperly deducted the payrolls for the concrete sealing work from the original contract price.

{¶43} Again, the trial court had to make a determination whether American owed PNL damages for incorrectly charging the payroll and withholdings for the additional work. American argues that Nick simply testified to what he "felt" was owed to PNL and offered no documentation to support his testimony other than his handwritten calculations on Plaintiff's Exhibit 3. However, the trial court was in the best position to view and judge the demeanor of the witnesses, and the court found Nick's testimony on the concrete sealing work to be credible. While it is true that Nick did not provide further documentary evidence to support his testimony, there is nothing in the record to support a finding that Nick's testimony was not credible. Moreover, Ethel testified that Nick would tell her the hours that the PNL employees worked; therefore, he was testifying based upon his personal knowledge. Thus, the trial court did not lose its way in finding that American was not entitled to offset the damages for the concrete sealing payment.

{¶44} As to the repairs to the recycling unit, the trial court found that these repairs were not contemplated by the parties or negotiated for in the oral agreement and that it was unreasonable to find that PNL would agree to lease equipment from American which would require repairs at PNL's costs. Ethel's testimony supports this finding. She admitted that American and PNL did not have a rental agreement for the recycling unit. There was no testimony in the record that the parties negotiated for PNL to pay for repairs to the unit. Moreover, while American argues that Ethel's testimony on American's costs did not include charges for repairs, she did testify that she wrote a $1,009.12 check for a repair of American's equipment. She also testified that she wrote a check for $4,500 for repairs to the blower, although the cancelled check for this charge was not admitted during trial. Nick testified that the repairs to the blower were for the rented recycling unit. These two checks are the same amounts that Nick listed on Plaintiff's Exhibit 3 as the amount American owed to PNL for incorrectly charging for the

repairs. Thus, the trial court did not err in determining that American was not entitled to offset the damages for repairs to the recycling unit.

**{¶45}** In conclusion, American's assignments of error are meritless. When conflicting evidence is susceptible to more than one interpretation, evaluating witness credibility is a controlling factor, and left to the trier of fact who is in the best position to make that determination. We cannot say the fact-finder clearly lost its way; there is competent, credible evidence supporting the trial court's decision. As this was not an exceptional case, we must defer to the findings made by the trier of fact. The trial court's damages award was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.