[Cite as *Andes v. Winland*, 2017-Ohio-766.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| PHILIP J. ANDES | ) | |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | CASE NO. 15 BE 0060 |
| VS. | ) | 15 BE 0080 |
| | ) | |
| MICHAEL WINLAND, et al. | ) | OPINION |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas of Belmont County, Ohio
Case No. 14 CV 0140

JUDGMENT:                                         Affirmed.

APPEARANCES:
For Plaintiff-Appellant                        Attorney John Estadt
Attorney Kyle Bickford
46457 National Road West
St. Clairsville, Ohio 43950

For Defendant-Appellee, Michael Winland    Attorney Adam Myser
320 Howard Street
Bridgeport, Ohio 43912

For Defendant-Appellee, Heather Williams    Attorney Russell Gerney
11 East Beau Street
Washington, Pennsylvania 15301

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: March 3, 2017

DeGENARO, J.

{¶1} Plaintiff-Appellant, Philip J. Andes, appeals two trial court judgments: the first in favor of Defendants-Appellees, Michael Winland and Heather Williams, following a jury trial on Andes' adverse possession claim; and the second, overruling Andes' motion notwithstanding the verdict. On appeal, Andes asserts there is insufficient evidence supporting the jury's verdict, or alternatively, that the verdict is against the manifest weight of the evidence. He also argues that Williams' counsel misrepresented the evidence during his closing argument. As Andes' assignments of error are meritless, the judgment of the trial court is affirmed.

### Facts and Procedural History

{¶2} In March 2014, Appellees acquired title to a parcel of land ("the Winland-William parcel") adjacent to one owned by Andes. Upon taking ownership, Appellees discovered Andes had been storing some of his personal property on their newly-acquired land. By letter dated March 24, 2014, Appellees' counsel demanded that Andes remove all of his items of personal property from Appellees' real estate.

{¶3} Andes refused to comply; instead, he filed a verified complaint against Appellees, claiming that he and his predecessors-in-title had acquired the western portion of the Winland-Williams parcel by virtue of adverse possession. He sought an order quieting title to that portion to him, along with injunctive relief during the pendency of the action.

{¶4} Winland and Williams answered. The parties entered into a consent order in which, among other things, they agreed to a general description of the disputed area and stipulated that Andes would bear the survey costs. After a survey was competed, the parties agreed that the disputed area measured 0.836 acres, and that Appellees were the record title owners of that area. Cross-motions for summary judgment were overruled by the trial court.

{¶5} The matter proceeded to a jury trial on August 21, 2015, where the following evidence was adduced. Deed records demonstrating the chain of title to both parcels were admitted into evidence. Winland and Williams purchased their parcel in 2014. The Andes parcel was owned by Andes, his relatives, or his business

entities beginning in 1981.

{¶6} Andes presented two witnesses in support of his claim: his mother, Betty Andes, and himself. Betty testified that she and her late husband, Phillip F. Andes, via a business entity they owned known as Andes Insurance Agency, purchased the Andes parcel from Max and Nancy Potetz in 1981. Betty described the disputed area as "grass leading up to the edge [with] a few trees planted * * * [on the] edge line," which afforded a nice view of the Ohio River. She said that she and her husband kept the grass cut and any bushes trimmed in a neat manner and that they stored tractors and other miscellaneous equipment and tools on the disputed area. She said that they treated the disputed area as their own and visited it "probably once or twice a week, sometimes a little more[,]" but only in the spring, summer and fall; it was hard to access in the winter. At one point, there was a picnic table on the disputed area, but she did not know what happened to it. Betty testified that she had visited the disputed area about two weeks earlier, when she went to see Andes at his nearby home.

{¶7} Betty initially testified that Della Shaver, one of Winland's predecessors-in-title, saw that the Andes family would store things on the disputed area, but said nothing. However, she later stated that she believed she had permission from Shaver to be on the disputed area. Betty claimed that the disputed area looked substantially the same in 2001 as it did in 1981 when she and her husband purchased the adjacent Andes parcel. However, when presented with aerial photographs of the disputed area from 2001, she conceded she could see no equipment being stored in that area.

{¶8} Appellant Andes testified he was involved with the Andes parcel beginning when his parents purchased it in 1981. He stated he believed he or his predecessor's adversely possessed the disputed area from 1981-2004.

{¶9} However, Andes went on to testify that his mother, Betty only visited the disputed area "on occasion;" that it was more often visited by himself and his father. He also opined that Betty was "confused" about some of the timeframes because she

was 88 years old. Later, he specified that she was mistaken when she said she had been on the disputed area two weeks prior.

{¶10} Andes said that when his parents purchased the property in 1981, the disputed area contained a picnic area that was "essentially manicured from mowing" by the prior owner, Mr. Potetz, and contained a "lot of big trees" and picnic table overlooking the river. Andes said his parents continued to maintain the disputed area in the same manner. In the early 1980s, they stored a small bulldozer and Massey Ferguson tractor on the disputed area. In 1989, they stored on the disputed area a Ford 5000 tractor and a brush hog, "which is still up there." In addition, at that time, there was a post hole digger and a back drag farm implement on the disputed area. Andes said there was no attempt to conceal these items; they were open and obvious.

{¶11} Andes did not learn that the disputed area was not a part of the Andes parcel until 2004 when a survey was done relating to the creation of a nearby subdivision. However, he said they continued to maintain and use the disputed area in the same manner they had since 1981.

{¶12} Appellees' first witness, Dustin Reed, is a drafting technician from the Belmont County Engineering Department. He was qualified as an expert in aerial maps by the trial court. Dustin testified about county aerial maps from 2001, 2006 and 2011; these were aerial photographs showing the Andes parcel, and the Williams-Winland parcel, including the disputed area. Reed testified that the 2011 aerial map showed "junk" in the disputed area. The 2006 aerial map showed a vehicle and blocks or bricks in the disputed area. In the 2001 aerial map, there are leaves on the trees and Reed said he could not see any equipment or vehicles; the only feature he could make out on that map was something that appeared to be a road, path or stream. In his opinion, there was not nearly the amount of features on the disputed area in 2001, compared to 2011. Reed explained that "features" are items aside from trees; items that are out of the ordinary, including buildings, equipment and vehicles.

**{¶13}** Finally, Winland testified that he and Williams acquired their parcel in 2014; during a survey they discovered "junk" on the disputed area including pipes, bricks, miscellaneous building materials, French drains and rotten lumber. They sent Andes a letter asking him to remove the items and Andes responded by filing suit against them.

**{¶14}** Winland said that as a teenager in 2003 and 2004 he went on the disputed area to cut firewood. He said he had permission to do so from the owner at the time. He witnessed others use the disputed area during that time, also. For example, people would hunt on that land, and he and his friends would go four-wheeling there. He described the disputed area at that time as mostly wooded, and littered with tree tops with branches. Winland explained that these tree tops were there because: "the previous land-owner, A&D Woodland, timbered the property in the mid '90s. When they timber it, you cut the tree, you take the best part of the tree and you leave the top. There was treetops all over the place, which is where my main source of firewood came from, was off the tree tops from that area." Winland later clarified that A&D Woodland was a business entity owned by the Raber family and that Andy Raber had the disputed area logged.

**{¶15}** Winland denied there was grass that could be easily cut on the disputed area; he said it consisted of weeds amongst the cut tree tops. In addition, Winland testified that he placed a shed on the disputed area in 2008.

**{¶16}** After the completion of Appellees' case, there was a jury view of the disputed area. The parties made cross-motions for directed verdict, which were overruled by the trial court.

**{¶17}** After considering all of the evidence, the jury reached a unanimous verdict in favor of Appellees, finding that Andes failed to prove by clear and convincing evidence that he and his predecessors-in-title have been in actual, open, notorious, continuous, hostile, and exclusive possession of disputed area for at least 21 years. The trial court entered judgment on the verdict. Andes thereafter filed a motion for JNOV, which the trial court overruled.

**Sufficiency/JNOV Ruling**

**{¶18}**  In his first of three assignments of error, Andes asserts:

The trial court erred in determining the evidence is legally sufficient as a matter of law to support the verdict.

**{¶19}**  Appellate courts review decisions to grant or deny a motion for JNOV de novo, meaning we apply the same standard used by the trial court, without deference to the trial court's decision. *Environmental Network Corp. v. Goodman Weiss Miller, LLP*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, ¶ 22.

**{¶20}**  "A motion for JNOV under Civ.R. 50(B) tests the legal sufficiency of the evidence." *Aqua Ohio, Inc. v. Allied Indus. Dev. Corp.*, 7th Dist. No. 13 MA 85, 2014-Ohio-1473, ¶ 25, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 25 (a motion for JNOV presents a question of law); and *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976) (motions for JNOV employ the same standard as motions for directed verdict).

**{¶21}**  Sufficiency in both civil and criminal cases is "a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. * * *" *Eastley* at ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1433 (6th Ed. 1990).  Thus, when ruling on a Civ.R. 50(B) motion, the trial court should not weigh the evidence or evaluate the credibility of the witnesses. *Malone v. Courtyard by Marriott*, 74 Ohio St.3d 440, 445, 659 N.E.2d 1242 (1996).

**{¶22}**  "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d 1009 (1998), syllabus.  In order to establish the necessary twenty-one year period for an adverse possession claim, a party may add to their own term of adverse use any period of adverse use by prior succeeding owners in privity with one

another. *Zipf v. Dalgarn*, 114 Ohio St. 291, 151 N.E. 174, syllabus.

**{¶23}** " 'Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal. ' " *State v. Eppinger*, 743 N.E. 2d 881, 887, 91 Ohio St.3d 158 (2001), quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶24}** Further, as this court has stated previously:

> Failure of proof of any of the elements of adverse possession results in failure to acquire title by adverse possession. *Grace*, 81 Ohio St.3d at 579, 692 N.E.2d 1009. "A successful adverse possession action results in a legal titleholder forfeiting ownership to an adverse holder without compensation. Such a doctrine should be disfavored, and that is why the elements of adverse possession are stringent." *Id.*, at 580, 692 N.E.2d 1009, citing 10 Thompson on Real Property (Thomas Ed.1994) 108, Section 87.05.

*Merriner v. Goddard*, 7th Dist. No. 08-MO-2, 2009-Ohio-3253, ¶ 20.

**{¶25}** Andes claimed a period of adverse possession from 1981 to 2002. It is undisputed that Andes was in privity with his predecessors-in-title back to 1981; the prior landowners to that point were either Andes' family members or business entities.

**{¶26}** However, Betty Andes testified that she believed she had permission from Appellees' predecessor-in-title, Della Shaver, to use the disputed area. Permission from the landowner destroys the adverse use element required to acquire title by adverse possession. *See Grace*, 81 Ohio St.3d at 582. Further, Winland testified that there were logging activities in the disputed area during the mid-1990's by parties other than Andes. This defeats the exclusive possession element required

for an adverse possession claim.

**{¶27}** Even if the 21-year period were viewed differently, i.e., from 1993 to 2014, there is still evidence that interrupts the exclusive nature of the possession. Winland testified that as a teenager in 2003 and 2004, well before he owned the property, he visited the disputed area to cut firewood and ride his four-wheeler. He testified that hunters used the disputed area during this time. Winland also said he put a shed on the disputed area in 2008.

**{¶28}** As there was sufficient evidence supporting the jury's verdict rejecting Andes' adverse possession claim, the trial court correctly overruled Andes' JNOV motion, and Andes' first assignment of error is meritless.

### Manifest Weight

**{¶29}** In his second assignment of error, Andes asserts:

The verdict is against the manifest weight of the evidence.

**{¶30}** The civil manifest weight standard is the same as the criminal standard. *PNL Industries Co. v. Am. Painting Co.*, 7th Dist. No. 12 MA 17, 2013-Ohio-1432, ¶ 28, citing *Eastley* at ¶ 17-23, and *Thompkins* at 387.

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [verdict].

*Thompkins* at 387.

**{¶31}** "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable

presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3. This is so because, the triers of fact are "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal at* 80. Further, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

{¶32} As discussed in the sufficiency section above, Betty Andes testified that she had permission from the prior owner of the Williams-Winland parcel, Della Shaver, to go onto the disputed area.

> A. We knew the people who owned it. There was never any objection.
> Q. So do you believe you had permission to be up here [on the disputed area]?
> A. They never told us we were not allowed to be up there.
> * * *
> Q. Did you believe you had permission to be in this area?
> A. Yes.

{¶33} While Andes is correct that Betty changed her testimony somewhat on redirect, her testimony was ultimately ambiguous regarding whether she had permission.

> Q. Now, I have a couple other questions concerning Della Shaver. You had indicated, when you were testifying, that you thought it was okay for you to - - for you and your husband and your family to use that disputed area in regards to Della Shaver, correct?
> A. Yes.

Q. You knew you didn't own that property?

A. Yes.

Q. That's correct?

A. Yes.

Q. Okay. But you went ahead and used it anyway?

A. Yes.

Q. With or without permission?

A. Yes.

**{¶34}** Then, when Andes himself testified, he called Betty's testimony into question on a number of issues. He stated Betty only visited the disputed are "on occasion;" that it was more often visited by himself and his father. He also opined that Betty was "confused" about some of the timeframes because she was 88 years old. Later, he specified that she was mistaken when she said she had been on the disputed area two weeks prior.

**{¶35}** The jury was free to believe all, part or none of Betty's testimony; it being in the best position to judge matters of credibility. Assuming the jury believed Betty's testimony that she had permission from the then-title-owner to be on the disputed area, the continuous possession element is not met and Andes' adverse possession claim fails.

**{¶36}** Andes argues that Winland's testimony that A&D Woodlands owned the Winland-Williams parcel in the mid-1990s and logged the property during that time is inconsistent with the documents demonstrating the chain of title, and makes much of this issue in his brief. Essentially it appears he is arguing that since Winland was confused or mistaken about the owner of the Winland-Williams parcel during the mid-1990s, his testimony that the disputed area was logged during that time was not believable.

**{¶37}** Deed records show that A&D Woodland, Ltd. did not acquire the Winland-Williams parcel until 2011 via a quit claim deed from Andy A. Raber and Mattie Raber. However, the deed records also show that Andy and Mattie Raber

acquired the parcel in 1997, and that A&D Woodland is comprised of members of the Raber family. In other words, the evidence shows that from 1997 to 2011, the Winland-Williams parcel was owned by either members of the Raber family or a Raber business entity. i.e., A&D Woodland. Thus, the fact that A&D Woodland may not have legally owned the Winland-Williams parcel in the mid-1990s does not render Winland's testimony that A&D Woodland logged the disputed area during that time period completely unbelievable.

{¶38} And more importantly, if Betty's testimony regarding permission is believed, then Winland's testimony about the logging activities in the mid-1990s is not needed to defeat Andes' claim.

{¶39} Finally, overall the evidence presented by Andes in support of his adverse possession claim was weak. Betty testified that she and her late husband regularly visited the disputed area to picnic. However, she conceded they did not visit the disputed area during the winter. And although both Andes and Betty claimed that vehicles and building materials were continuously stored on the disputed area, the 2001 aerial photograph presented by Appellees does not clearly support that.

{¶40} The Supreme Court of Ohio quoted the Vermont Supreme Court in stating "that to establish adversity, '[t]he tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest.' " *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d 1009 (1998), quoting *Darling v. Ennis*, 138 Vt. 311, 313, 415 A.2d 228, 230 (1980). The actions of Andes and his predecessors do not meet this high standard.

{¶41} Accordingly, the verdict was not against the manifest weight of the evidence, and Andes' second assignment of error is meritless.

**Closing Arguments**

{¶42} In his third and final assignment of error, Andes asserts:

Defense counsel improperly influenced the jury by arguing matters not

in evidence.

**{¶43}** Andes assert that counsel for Appellees misrepresented the evidence during closing arguments by stating that logging took place on the disputed property in 1997 by A&D Woodland and by stating that Andy Raber was a member of A&D Woodland.

**{¶44}** Andes cites *Tackett v. Robertson*, 2d Dist. No. CA 11597, 1990 WL 54970 (April 25, 1990), in support of his argument. Therein the court, relying upon two Ohio Supreme Court cases, stated:

> " * * *[i]t is improper for counsel to * * * make statements which are intended to get evidence before the jury which counsel was not entitled to have the jury consider. * * *
>
> 'Counsel should be accorded latitude by the trial court in making his opening statement, but when he deliberately attempts to influence and sway the jury by a recital of matters foreign to the case, which matters he knows or ought to know cannot be shown by competent or admissible evidence, or when he makes a statement through accident, inadvertence or misconception which is improper and patently harmful to the opposing side, it may constitute the basis for ordering a new trial or for the reversal by a reviewing court of a judgment favorable to the party represented by such counsel.' "

*Tackett* at * 11-12, quoting, *Drake v. Caterpillar Tractor Co.*, 15 Ohio St.3d 346, 347-48, 474 N.E.2d 291 (1984), quoting *Maggio v. Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (1949).

**{¶45}** However, Andes failed to object to opposing counsel's closing argument. "An appellant's failure to object at trial waives all but plain error." *Fearer v. Humility of Mary Health Partners*, 7th Dist. No. 06 MA 84, 2008–Ohio–1181, ¶ 119. Plain error is present when "there is an obvious deviation from a legal rule that

affected the defendant's substantial rights by influencing the outcome of the proceedings." *In re T.J.W.*, 7th Dist. No. 13 JE 12, 13 JE 13, 13 JE 14, 2014–Ohio–4419, ¶ 11. Plain error review is not favored in civil cases and should only be used in the "extremely rare case involving exceptional circumstance where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Kirin v. Kirin*, 7th Dist. No. 08 MA 243, 2011–Ohio–663, ¶ 19, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), at paragraph one of the syllabus.

**{¶46}** It is true that Winland testified that the disputed area was logged in "the mid '90s", and not 1997, but either way that would break the exclusive period of adverse possession claimed by Andes. It is also true that the deeds reflect that A&D Woodland did not own disputed area in the mid-1990s, contrary to Winland's testimony and what was stated by Williams' counsel during his closing. To state that Andy Raber was a member of A&D Woodland was technically inaccurate; however, the entity was made up of *other* members of the Raber family, namely Abraham Raber, Duane D. Raber, Andrew D. Raber [different middle initial than Andy Raber] and Katie M. Raber. Thus, the misstatements made by counsel during his closing were minor and not prejudicial; they do not rise to the level of plain error.

**{¶47}** Further, the jury was instructed by the trial court that opening and closing statements by counsel are not evidence.

**{¶48}** Accordingly, Andes' third assignment of error is also meritless.

**{¶49}** In sum, the jury's verdict is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellee Williams' counsel's slight misstatements during closing statements do not rise to the level of plain error.

Accordingly, the judgments of the trial court are affirmed.

Waite, J., concurs.

Robb, P. J., concurs.