[Cite as *State v. Collins*, 2026-Ohio-2212.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JONATHAN W. COLLINS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 HA 0007**

---

Criminal Appeal from the
Harrison County Court of Harrison County, Ohio
Case No. TRD-25-00551

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lauren E. Knight*, Harrison County Prosecuting Attorney, *Atty. Jack L. Felgenhauer,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Brett H. Hillyer*, Connolly, Hillyer & Ong, Inc., for Defendant-Appellant.

Dated:  June 11, 2026

**Robb, J.**

{¶1}   Appellant, Jonathan W. Collins, appeals the October 27, 2025 judgment convicting him of speeding in violation of R.C. 4511.21(D)(1).   Collins argues his conviction is based on insufficient evidence and is against the manifest weight of the evidence.   For the following reasons, we affirm.

<u>Statement of the Facts and Case</u>

{¶2}   Collins was cited for speeding in violation of R.C. 4511.21(D)(1) for traveling 81 miles per hour in a 55 miles per hour zone.   The citation was issued by Trooper R. Grubb and dated April 15, 2025.   Grubbs' written remarks on the ticket indicate:  "RADAR (SP0701) calibration check OK @ 0800 hrs, NV, 1st offense, F81 L(F)79 SP56 R67."  In the box titled "SPEED," there are check marks in the boxes labeled "Over limits," "Radar," and "Moving."

{¶3}   Collins retained counsel, who entered a notice of appearance on his behalf, entered a plea of not guilty, waived Collins' speedy trial rights, and moved the trial court to terminate any bureau of motor vehicle suspension due to his failure to appear.

{¶4}   The trial court set the case for a pretrial hearing in June of 2025.   The case was set for another pretrial in July of 2025, which was then reset to August of 2025. Defense counsel moved the court to convert the August pretrial date to a bench trial.   The pretrial was held, and the trial court set the case for trial in October of 2025.

{¶5}   Collins filed a request for discovery pursuant to Crim.R. 16.   (August 29, 2025 Discovery Request.)  The state filed its notice of compliance and issued a reciprocal request for discovery.  (September 18, 2025 State's Notice.)

{¶6}   The bench trial was held October 27, 2025, and Collins was found guilty of speeding.   He was ordered to pay a $125 fine and court costs.   (October 27, 2025 Judgment.)

{¶7}   At trial, the court began the proceedings by advising Collins that he was charged with the minor misdemeanor of speeding, and if convicted, he faced a $150 fine and two points on his operator's license.   Both sides waived opening statements.  (Trial Tr. 3.)

<u>Case No. 25 HA 0007</u>

**{¶8}** The state called Trooper Robert A. Grubb to testify. Grubb is stationed in Steubenville and has been a trooper with the Ohio State Highway Patrol (OSHP) for 23 years. Defense counsel stipulated to Grubb's qualifications. Grubb explained he was referred to as a "road trooper" and his duties include patrolling the assigned area in a marked car for traffic control purposes. (Tr. 4.)

**{¶9}** Grubb testified he attended a six-month course at The Ohio State Highway Patrol Academy. He attended a separate week-long training program to learn electronic speed measuring devices, including radar and laser devices. The last two days of the course, Grubb said he drove around with a certified speed instructor and "practiced estimating," which included visually estimating speed. Grubb passed the course and has to recertify annually. (Tr. 4-7.)

**{¶10}** Grubb said he uses this training almost daily in his patrolman duties, except on training days or days there are frequent crashes like during a snow storm. He estimates he has issued thousands of speeding violations in his 23 years of employment with the OSHP. (Tr. 9.)

**{¶11}** On April 15, 2025, when Grubb pulled over Collins, Grubb was assigned to work in Harrison County. Grubb was in a marked car at the time with an assigned speed measuring device. Grubb was using a BEE III Ka-Band Radar device, which is a Doppler radar device manufactured by MPH Industries. (Tr. 10-12.) When asked if Grubb did anything to ensure the device was working that day, he replied:

> Yes. Every day that I am working and I'm proactive I start the day with a calibration check which involves turning the device on. By doing that it sends itself through a self check. When it completes the self-check and indicates that it's working properly there will be a 32 in one window, a PAS in the middle and I believe a 32 in the far right window. Then it follows that with a light check which illuminates all of the light segments in all the windows and that lets us know that all the lights are functioning and couldn't give us an erroneous reading by lights not working.
>
> Following that we do a tuning fork check. Have a 50 mile per hour tune fork and a 20 mile per hour tuning fork. Those tuning forks I guess simulate a target for the radar, and we'll check that by striking the tuning

forks on a non-hard surface such as your steering wheel. Present it in front of the radar and we're looking for the speed that's stamped into the tuning fork.

. . . [O]ne is a 50 mile per hour, there's a 20 miles per hour.

(Tr. 12-14.) Grubb also testified to the following on direct examination:

Q Did you check that?

A I did.

Q Do you have it in stationary mode when you do that?

A Right.

Q What'd you do next?

A After that you switching it over to moving mode and then we're going to strike both tuning forks, present that in front of the radar and when it's functioning properly you'll have a 30 in the violator or target window, 30 in the target lock window in the center, and 20 in the patrol speed box window.

(Tr. 13-14.)

{¶12} Grubb verified this is the manner that he checked the radar on April 15, 2025 before his shift. He said the unit was functioning properly. Grubb said he does not calibrate the unit. Instead, the OSHP employs an electronic technician who checks the calibration once a year. (Tr. 14-15.) The state then introduced State's Exhibit 2, the OSHP radar and tuning fork frequency measurement report for the unit assigned to the car Grubb was using April 15, 2025. It shows the unit was checked May 1, 2024 and then again on May 2, 2025. When asked how to tell if a unit was calibrated, Grubb responded that was "above my paygrade but [the report] indicates that it is functioning." (Tr. 16-17.) Grubb verified the radar unit was properly functioning on the date Collins was cited. (Tr. 17.)

{¶13} Grubb recalled Collins' car speeding on the day of the citation. He said traffic was "incredibly light." Grubb saw a car approaching that appeared to be traveling over the speed limit. Collins' vehicle was traveling behind another one, and Collins' vehicle was "gaining on [the one in front of it] quite quickly. I observed it to be speeding." (Tr. 18.) Grubb visually estimated the car's speed. Grubb said he was about 200 yards away from the vehicle. Collins was driving a later model Chevy Silverado, heavy duty.

Grubb used the radar in moving mode. He activated the antenna, picked up Collins' vehicle, and the unit indicated a speed of 81 miles per hour. Grubb was heading westbound, and the truck was heading eastbound. (Tr. 18-19.)

{¶14} Grubb said there were no obstructions at the time of the speed check, and the truck was about 200 yards away from his location. Grubb used the device on a flat and straight section of the road. He said the weather was clear, and the radar indicated Collins was slowing down as they passed one another. (Tr. 20-21.) Grubb then "locked [Collins'] speed in at 79 miles per hour." (Tr. 21-22.) Grubb was going 56 mph. The speed limit was 55 mph. (Tr. 22.)

{¶15} Upon pulling over Collins, he advised Grubb he had to use the bathroom. Collins also asked Grubb for "a break" to which Grubb responded "not for 81." (Tr. 23-24.)

{¶16} Grubb was then asked to identify his body camera footage, which was played at trial. Grubb verified that the footage in State's Exhibit 3 accurately depicted the stop that day. (Tr. 26-27.)

{¶17} The state indicated it was concluding its case in chief and resting. The prosecutor then stated: "I don't know that it's needed but the State would note as the court is aware, that judicial notice has been taken of the doppler radar and stationary and now moving mode and we'd move to admit State's Exhibits 1, 2 and 3." (Tr. 28.)

{¶18} Defense counsel subsequently moved for acquittal and dismissal of the charge. Collins' attorney urged the trial court to dismiss the case since the trooper failed to testify as to the calibration of the radar at the end of his shift, which defense counsel argued is required to ensure the machine was working at the end of the shift. Second, the defense argued the trooper did not testify that he isolated the car in front of Collins' truck. Third, defense counsel argued the lack of testimony showing the tuning forks were correctly functioning also supported dismissal. Last, Collins' attorney claimed there was nothing showing the court or that jurisdiction had taken judicial notice of moving radar. (Tr. 28-29.)

{¶19} In response, the state argued it was not aware of a requirement for testimony establishing the radar device was functioning properly at the end of the shift. As for the judicial notice argument, the state argued that issue had been settled by the

Case No. 25 HA 0007

Ohio Supreme Court. Last, the state asserted there was nothing to contradict that Collins was traveling 81 mph in a 55 mph zone. (Tr. 30.)

{¶20} In rebuttal, the defense argued the state had to establish the radar device was operable and functioning properly at the beginning and end of the shift to demonstrate it was accurate at the time it was used. Counsel also argued the Ohio Supreme Court had not taken judicial notice of moving radar, only stationary radar. (Tr. 30-31.)

{¶21} The trial court denied the motion for acquittal, and the defense did not present evidence. Both sides waived closing arguments. (Tr. 31.) The trial court found Collins guilty of speeding 81 mph in a 55 mph zone, a minor misdemeanor. (Tr. 31.) It imposed a fine and court costs.

{¶22} Collins appealed the October 27, 2025 judgment. He raises three assignments of error.

Mootness/Satisfaction of Judgment

{¶23} Before proceeding to the assignments of error, the state urges us to dismiss this appeal due to mootness. The state alleges because Collins paid his fine and court costs and admitted guilt, the assignments of error are moot. We disagree.

{¶24} Where a defendant voluntarily satisfies the judgment imposed in a misdemeanor criminal case by paying the fine or completing the sentence, an appeal from that conviction is moot unless an inference can be drawn that the defendant will suffer collateral legal disability or loss of civil rights as a result of that conviction. *State v. Golston,* 71 Ohio St.3d 224, 226 (1994); *Columbiana v. Clark*, 2012-Ohio-4573, ¶ 6-11 (7th Dist.). On appeal, the defendant in *Clark* did not challenge the trial court's finding of guilt and did not seek to stay his sentence. Clark only disagreed with the imposition of court costs. Accordingly, we found the appeal was moot. *Id*. at ¶ 11.

{¶25} In *State v. Houston*, 2018-Ohio-2788 (7th Dist.), however, this court noted the appeal in that case was not moot because Houston was challenging the facts of his conviction. We also found an inference could be drawn that Houston incurred points on his driver's license as a result of the conviction, a collateral legal disability from a traffic offense. *Id.* ¶ 8, fn. 1.

**{¶26}** In this case, the October 27, 2025 trial transcript reflects defense counsel stated Collins would "take care of" the fine and court costs on the date of the bench trial. (Tr. 33.) Further, the docket entry dated October 27, 2025 states in part: "DEF. … FOUND G, FINE 125.00, SUSP. .00 COSTS 90.00, SUSP. .00 SPECIAL CONDITIONS: F & C PD. IN FULL." Collins did not request a stay of execution of the trial court's judgment. He paid the fine and court costs without objection.

**{¶27}** However, the court began the bench trial by advising Collins he was charged with the minor misdemeanor of speeding, and if convicted, Collins faced a $150 fine and two points on his operator's license. (Trial Tr. 3.) Thus, like *Houston,* Collins' payment of the fine and court costs has not rendered this appeal moot since Collins faces the collateral disability of points on his license under R.C. 4510.036(C)(12). Consequently, the state's request for dismissal of this appeal as moot is denied.

Assignments of Error

Sufficiency of the Evidence

**{¶28}** Collins' first assignment of error asserts:

"The Trial Court Erred in failing to grant the Criminal Rule 29 Motion by the Appellant as the State failed to prove beyond a reasonable doubt that the Appellant was in fact speeding in excess of the posted speed limit, given that the speed measuring device was not calibrated during or at the end of shift."

**{¶29}** Collins contends there was insufficient evidence to support his conviction as a matter of law since the trooper did not testify as to the accuracy and reliability of the radar device he used at the end of his shift and after issuing Collins' citation. As alleged, the trooper did not testify the device was tested or that he verified it was working correctly at the end of his shift or at the beginning of his next shift.

**{¶30}** Collins argues this court's decision in *State v. Pavetic*, 2021-Ohio-4637, ¶ 24 (7th Dist.), requires the state to establish the accuracy and qualifications of radar devices via testimony that the device used was checked for accuracy at the beginning and end of the officer's shift.

**{¶31}** The state counters the trial court properly overruled Collins' motion for acquittal. The state alleges *Pavetic* is distinguishable since the officer in *Pavetic* admitted he did not follow his department's policy of verifying the accuracy of the radar device at

the end of each shift. The state argues *Pavetic* does not hold that all convictions require evidence that an "end of shift" accuracy check is required. Further, the state asserts Pavetic's conviction was upheld.

**{¶32}** In addition, the state asserts the annual certificate of calibration introduced by the state as Exhibit 2 was sufficient to establish the device was certified and met the applicable standards. The state contends this exhibit was admitted without objection as a business record, and there was more than sufficient evidence to support Collins' conviction.

**{¶33}** Whether evidence is legally sufficient to sustain a verdict is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380 (1997). A challenge on sufficiency grounds involves the state's burden of production rather than its burden of persuasion. *Thompkins* at 549 (Cook, J., concurring). On appeal, we determine whether the evidence presented, viewed in a light most favorable to the prosecution, allows a rational trier of fact to find the essential elements of the crime established beyond a reasonable doubt. *State v. Dent*, 2020-Ohio-6670, ¶ 15. We view the evidence and all reasonable inferences in the state's favor. *State v. Goff*, 82 Ohio St.3d 123 (1998).

**{¶34}** The state has the burden of establishing all material elements of a crime by proof beyond a reasonable doubt. *State v. Adams*, 62 Ohio St.2d 151, 153 (1980); R.C. 2901.05(A). The state must offer evidence at trial "of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E).

**{¶35}** Collins was convicted of one count of speeding in violation of R.C. 4511.21(D)(1), which states: "No person shall operate a motor vehicle . . . upon a street or highway . . . [a]t a speed exceeding fifty-five miles per hour." He was cited as traveling 81 miles per hour in a 55-mile-per-hour zone.

**{¶36}** One cannot be convicted of speeding based solely on an officer's visual estimation of a vehicle's speed. R.C. 4511.091(C)(1). Thus, for Collins' conviction to be supported by sufficient evidence, the speed-measuring device results must have been admissible. *Pavetic* at ¶ 10. To be admissible, the state must offer testimony about the

officer's qualifications and evidence about the accuracy of the device. *Pavetic* at ¶ 14, citing *City of Brook Park v. Rodojev*, 2020-Ohio-3253, ¶ 19.

**{¶37}** As stated, the officer in *Pavetic* acknowledged he did not comply with his department's policy; he did not check the laser's calibration at the end of his shift. Notwithstanding, we found the lack of evidence in this regard did not demonstrate there was insufficient evidence to support the conviction. Instead, the nature of this testimony went to whether the results should be trusted, which is an issue of manifest weight of the evidence. *Id*. at ¶ 24. And Pavetic did not raise a manifest weight of the evidence argument on appeal. Thus, we affirmed his conviction. *Id*. at ¶ 25.

**{¶38}** Contrary to Collins' argument, *Pavetic* did not broadly hold that testimony is required showing a device was checked for accuracy at the beginning and end of the officer's shift.

**{¶39}** Further, the Supreme Court in *Brook Park* found that neither expert testimony nor judicial notice are required to establish the underlying principles for radar technology for the results to be admissible. *Id*. at ¶ 10. This is because the technology has been used for nearly a century to calculate the speed of moving objects. *Id*. And this is regardless of whether the radar is stationary or moving radar. *Id*. at ¶ 11. However, *Brook Park* held the finder of fact must determine whether the evidence presented concerning the accuracy of the speed-measuring device and the qualifications of the person who used it is sufficient. *Id. Brook Park* explained the requirements for sufficient evidence for moving radar, stating:

> Differences in the devices include that a moving radar speed-measuring device must compensate for the speed of the police vehicle in relation to the vehicle it is tracking. And rather than tracking an individual vehicle, a moving radar speed-measuring device usually tracks the fastest moving object within its range. Because of this, the officer must visually determine which vehicle within the device's range is traveling the fastest. *Id.*

> Both of these differences are device-specific and still require the fact-finder to determine whether the evidence presented concerning the accuracy of the device and the qualifications of the person who used it is sufficient to support a conviction based on the device's results. But neither

Case No. 25 HA 0007

difference calls into question the reliability of the scientific principles underlying radar speed-measuring technology: when radio waves are intercepted by a moving object, the frequency of the waves changes "in such a ratio to the speed of the intercepted object that, by measuring the change of frequency, the speed may be determined."

(Citations omitted.) *Id.* at 12-13.

**{¶40}** *Brook Park* concluded its analysis by stating while admissible, other substantive challenges, including arguments about the angle the officer held the device in relation to the vehicle, the device's accuracy-validation algorithms, the calibration and maintenance schedule of the device, and the officer's qualifications to use the particular device, go to the sufficiency and weight of the evidence. Determinations involving sufficiency and manifest weight of the evidence should be addressed on a case-by-case basis. *Id*. at ¶ 18-19.

**{¶41}** In *City of Campbell v. Rosario*, 2018-Ohio-337 (7th Dist.), this court held it is "sufficient to show that the meter was properly set up and tested by a technician trained by experience to do so, and that at the time it was functioning properly." *Id*. at ¶ 14, quoting *City of Lyndhurst v. Danvers*, 1988 WL 124999, *1 (8th Dist. Nov. 23, 1988), citing *East Cleveland v. Ferell*, 168 Ohio St. 298 (1958), syllabus.

**{¶42}** And in *State v. Packer*, 2021-Ohio-4636 (7th Dist.), this court found the officer's testimony that he was trained and proficient in using the laser device was sufficient. This same officer explained how the calibration of the device was checked, and he verified how he followed the procedure before and after his shift. *Id*. at ¶ 27. The officer explained he used a scope to aid in tracking the correct vehicle. We found his testimony was adequate and sufficient to show he was trained to use the device and it was working properly on the date in question. *Id*.

**{¶43}** As detailed under the statement of facts, Trooper Grubb verified the device he used was properly working on the date of Collins' citation. Grubb detailed how he checked the device's moving mode and stationary mode before the beginning of his shift. Additionally, Grubb confirmed the OSHP's electronic technician, as documented in State's Exhibit 2, had calibrated the device.

{¶44} Grubb also testified he was trained and retrained on using radar and he uses his training almost daily in his duties as a road trooper. Collins did not challenge Grubb's credentials or training.

{¶45} On the date of the citation, Grubb recalled that Collins' vehicle was speeding based on the rate of speed at which Collins' vehicle gained on the vehicle traveling in front of it. Collins' vehicle was going faster than the other vehicle, and traffic was incredibly light that date. Grubb's description in this regard is also depicted in the dashboard camera video admitted at trial. Thus, Grubb visually determined which vehicle was traveling the fastest.

{¶46} Further, and as stated, Collins did not present evidence at trial. Defense counsel did not argue the device was not functioning properly on the date of Collins' citation.

{¶47} Collins also directs us to *Greater Cleveland Metroparks v. Ismail*, 2017-Ohio-5570, ¶ 15-16 (8th Dist.), as showing there must be evidence that the officer checked the calibration before and after her shift to demonstrate the device was functioning properly. The Eighth District stated:

> The "good working condition" requirement was satisfied by Ranger Dollard's testimony that she checked the calibration on the device at the beginning of her shift and after each ticket she wrote to ensure that it was functioning properly. Metroparks also presented sufficient evidence as to the third element of speeding—that Ranger Dollard was qualified to use the device. Specifically, the ranger testified that she was certified to use that particular radar, and her certification was entered into evidence.
>
> On this record, Metroparks presented sufficient evidence to sustain Ismail's speeding conviction.

*Id.* at ¶ 15-16.

{¶48} Collins directs us to *City of New Middletown v. Yeager*, 2004-Ohio-1549, ¶ 9 (7th Dist.), in support of this argument. In *Yeager*, the officer testified the machine was calibrated before he started his shift that day. "He also testified that it was calibrated after the stop and it was operating correctly at that point." *Id.* at ¶ 12. However, because the officer did not set forth how he was qualified to use the radar device, we found the reading

setting forth Yeager's speed could not be used as evidence to show he was speeding. *Id*. at ¶ 13.

**{¶49}** Collins claims the state did not meet its burden of proof because it did not come forward with evidence showing the "foundational reliability of the speed measuring device used" due to the lack of evidence about whether it was properly functioning at the conclusion of Grubb's shift. We disagree.

**{¶50}** While evidence showing the device was examined and was properly functioning after the issuance of the citation on the date it was issued is certainly relevant and helpful, we decline to find evidence of this nature is necessary to establish the applicable speed-measuring device in a given case is functional.

**{¶51}** Grubb testified he measured Collins' speed via radar at 81 miles per hour in a 55 mile-per-hour zone. He provided an in depth explanation of his testing the device before his shift began. Grubb also explained his education and training on the device. There was no evidence the device was not working properly or that Grubb's understanding of the device, his training, or use of it on the date of Collins' citation was deficient or improper.

**{¶52}** Although Grubb did not testify he checked the accuracy of the device at the end of his shift or after detecting Collins' speed, Grubb stated he verified it was properly working before using it to record Collins' speed.

**{¶53}** Upon reviewing the evidence presented in a light most favorable to the prosecution, the evidence presented allows a rational trier of fact to find the essential elements of the crime established beyond a reasonable doubt. The state's evidence was sufficient for the trial court to determine the officer was qualified to use the device and the device was functioning properly on the date of the citation. Collins' first assigned error lacks merit.

<u>Judicial Notice</u>

**{¶54}** Collins' second assigned error asserts:

"The Trial Court Failed to Affirmatively Take Judicial Notice of the MPH B3 KA Band Radar nor Judicial Notice of the scientific principles of Moving Radar:

   a.      The Court Failed to find judicial notice on the record;

   b.      The State failed to articulate the difference between rulings by the Supreme

<u>Case No. 25 HA 0007</u>

Court and appellate courts relating to moving vs. nonmoving radar."

**{¶55}** Collins claims the state did not meet its burden of proof. He contends the trial court did not make a record finding of judicial notice as to the scientific reliability of the moving radar device used by Trooper Grubb. Consequently, Collins claims the court lacked sufficient evidence to convict him of speeding. We disagree.

**{¶56}** As stated, the Ohio Supreme Court in *Brook Park* held that neither expert testimony nor judicial notice are required to establish the underlying principles for radar technology for the results to be admissible. *Id*. at ¶ 10. This is regardless of whether the radar used in a particular case was stationary or moving. *Id*. at ¶ 11-13. Thus, Collins' arguments that judicial notice is required and the state failed to enunciate its authority in this regard lack merit.

**{¶57}** Accordingly, this assigned error is overruled.

<u>Manifest Weight of the Evidence</u>

**{¶58}** Collins' third and final assigned error contends:

"The Trial Court erred in convicting the appellant contrary to the manifest weight of the evidence."

**{¶59}** Under this assignment, Collins asserts his conviction is against the manifest weight of the evidence due to the lack of evidence demonstrating the scientific reliability of and proper operation of the speed-measuring device at the time of his citation. We disagree.

**{¶60}** To warrant reversal from a bench trial under a manifest weight of the evidence claim, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶61}** Appellate courts "should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. . . . The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 81 (1984); *accord Andes v. Winland*, 2017-Ohio-766, ¶ 31 (7th Dist.).

{¶62} The credibility of the witnesses is primarily for the finder of fact because the trial judge is best able to view the witnesses and observe their demeanor, including voice inflections and body language. *Seasons Coal Co.* at 80. Moreover, the factfinder "is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis,* 2013-Ohio-1184, ¶ 18 (8th Dist.), citing *Iler v. Wright,* 2002-Ohio-4279, ¶ 25 (8th Dist.).

{¶63} Here, there was sufficient evidence that Trooper Grubb was properly trained to use the radar device. He also established it was functioning correctly before the commencement of his shift. He testified in detail as to what steps he undertook in verifying its accuracy. Grubb also explained the OSHP employed an electronics technician who calibrated the device annually. State's Exhibit 2 was introduced at trial. This exhibit confirmed the device had been calibrated in accordance with OSHP standards. Thus, Collins' arguments to the contrary lack merit.

{¶64} Moreover, Grubb testified he witnessed Collins traveling in excess of the posted speed limit based on the way Collins' vehicle caught up with the vehicle traveling in front of his. This description is also captured on the dashboard camera video, which was introduced at trial. There was no evidence to the contrary, and nothing in the record tended to discredit Grubb's testimony, training, or experience.

{¶65} Moreover, upon pulling Collins over, Collins advised Grubb he had to use the bathroom. Grubb also testified that Collins asked Grubb for "a break." The audio of their interaction is not in the body camera footage. Nevertheless, Grubb's testimony in this regard shows Collins was likely making an excuse for speeding. Further, it can be reasonably inferred that Collins' request for "a break" was an acknowledgement he was traveling in excess of the speed limit.

{¶66} In light of the foregoing, we cannot find the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Collins' third assigned error is overruled.

Conclusion

{¶67} In light of the foregoing, each of Collins' assignments of error lacks merit. The trial court's judgment is affirmed.

Hanni, J., concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Harrison County Court of Harrison County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**